IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

NOV 1 0 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| AVIGAIL MARTINEZ DE ROMERO Individually, and As Guardian of ANGEL ROMERO, JR., Mentally and Physically Incompetent; ANGEL ROMERO GONZALEZ and GLORIA BADILLO RODRIGUEZ DE ROMERO, The Natural Parents of ANGEL ROMERO, JR.; and LUCILLA DELGADO ROMERO, As Next Friend of ANGEL ROMERO DELGADO and CAROLINA ROMERO DELGADO, Minor Children of ANGEL ROMERO, JR. | § § § § § § § § § § § § § | |
| VS. | § § | CIVIL ACTION NO. B-03-153<br><br>JURY DEMANDED |
| UNIVAR USA, INC.; NEVGULMARCO COMPANY, INC.; ZIMCO, INC.; and CARMELITA, INC., As the Owner/ Operator of The M/V "Carmelita" | § § § § § | |

## DEFENDANTS' RESPONSE TO MOTION TO REMAND AND BRIEF IN SUPPORT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants **Nevgulmarco Company, Inc.; Zimco Marine, Inc.; and Carmelita, Inc.** respond to Plaintiffs' Motion to Remand:

### Statement Of Facts

1.  Plaintiff **Angel Romero, Jr.** became comatose while in the freezer hold of the **M/V Carmelita**. The cause of his comatose condition is unknown, but Plaintiffs claim it was caused when a powder form of sodium metabisulfite mixed with ice water

in the hold. This allegation ignores the fact that the **M/V Carmelita** is a freezer boat which does not have ice water in the hold and the fact that powder form of sodium metabisulfite was never introduced in that freezer hold. The powder is mixed with water in a brine tank on deck and shrimp are dipped in that brine tank and allowed to drain off excess fluid back into the tank.

2.      Defendant **Nevgulmarco Company, Inc.** entered into an ERISA plan to provide benefits to employees who are injured in a work-related accident while performing their job furthering the company's interest. (See "Exhibit A" to Plaintiff's (sic) Brief in Support of Jurisdiction).

3.      The Defendants filed their Plaintiffs' Original Petition on August 29, 2003 at 3:28 o'clock p.m. requesting this Court enter its declaratory judgment that **Angel Romero, Jr.** has agreed to submit each and every employment dispute, including a personal injury incurred in his employment, to the alternative dispute resolution program set out in his employer's Employee Booklet.

4.      On August 29, 2003, at 4:30 o'clock p.m., suit was filed in the 404th District Court of Cameron County, Texas on behalf of **Angel Romero, Jr.** and others alleging negligence claims based on unseaworthiness and the Jones Act. Plaintiffs also allege a variety of state law claims based on breach of warranties, product liability, civil conspiracy, strict liability, gross negligence and malice.

5.      On September 9, 2003, the pending suit in State Court was removed to Federal Court on the basis that the Federal Courts have exclusive jurisdiction over any

and all claims for relief pursuant to a benefit plan which qualifies under the Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C. § § 1001-1461.

6.   On or about October 23, 2003, Plaintiffs filed their Motion to Remand and Brief in Support arguing that (1) a Jones Act case cannot be removed and (2) ERISA does not preempt the Jones Act claims.

### Jones Act Cases

7.   The issue of removal of a Jones Act case to Federal Court under the complete preemption doctrine of ERISA is, in these Defendants' belief, a case of first impression.  Defendants concede that in the normal course of litigation when an employer has no ERISA plan in place, a Jones Act case is not removable because of its referral to the Federal Employers' Liability Act which bars removal.  However, that general policy must fail when confronted with the specific provisions of ERISA.

8.   In particular, "the complete preemption doctrine provides 'that Congress may so completely preempt a particular area . . . that any civil complaint raising this select group of claims is necessarily federal in character.'" *Threadgill v. Cingular Wireless, L.L.C.*, 223 F.Supp.2d 786, 788 (E.D. Tex. 2002); quoting *Heimann v. National Elevator Indus. Pension Fund*, 187 F.3d 493, 499 (5th Cir. 1999); quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). This Court must take notice that "the legislative history of ERISA indicates that Congress, while attempting to formulate legislation concerning employee benefit plans, devoted consideration attention to the question of preemption.  A more limited preemption provision in early drafts of ERISA was ultimately rejected in favor of the

more sweeping language found in Section 1144(a). The conference report indicates that the committee intended that preemption be just as broad as the statutory language suggests." See *Commercial Mortgage Insurance, Inc. v. Citizens National Bank of Dallas*, 526 F.Supp. 510, 521 (N.D. Tex. 1981) citing Senate Rep. No. 93-127, 93d Cong., 2d Sess. 3, reprinted in (1974) U. S. Code Cong. & Adm. News 4838, 4900; Senate Rep. No. 93-383 93d Cong., 2d Sess. 3, reprinted in (1974) U. S. Code Cong. & Adm. News 4890.

9.  Furthermore, in paragraph IV of Plaintiffs' Motion to Remand, Plaintiffs assert that maritime action cannot be removed from State Court to Federal Court. Plaintiffs are misguided in this assertion. In fact, in a case Plaintiffs cite as precedent "that a federal court cannot exercise **removal** jurisdiction over claims subject to the saving to suitor clause" the court carved out an exception to this rule. *Williams v. M/V Sonora*, 985 F.2d 808, 812 (5th 1993). The *M/V Sonora* case further held that once the proper basis for removal had been dismissed, a court could exercise pendent jurisdiction over state law claims. *Id.* at 811-12. Furthermore, the Court held "[S]urely, where as here, when the court has an independent basis for jurisdiction" (the admiralty claim), "it should be granted even greater leeway" in retaining jurisdiction. *Id.* at 812. The Court's reasoning was based on "[T]he rationale behind deference in this regard is to avoid relitigation, and needless waste of precious judicial resources." *Id.* Defendants removed this case pursuant to the complete preemption doctrine of ERISA and, should this Court determine the case was properly removed as Defendants believe it should under that doctrine, federal subject matter jurisdiction will

remain in the case. Therefore, after applying the holdings in *M/V Sonora* to the facts of the case, this Court must deny Plaintiffs' Motion to Remand. The Plaintiffs' reliance on *Noyola v. Oasis Car Wash, Inc.*, 220 F.Supp.2d 638, 643 (E.D. Tex. 2002) and *Hook v. Morrison Milling Co.*, 38 F.3d 776, 779 (5th Cir. 1994) is also misplaced since in neither case was a claim made for benefits under the ERISA plan. The Fifth Circuit in *Hernandez v. Jobe Concrete Products, Inc.*, 282 F.3d 360 (5th Cir. 2002) has expressly recognized that *Hook v. Morrison Milling Co.* involved a claim which did not request benefits under the ERISA plan and was not, therefore, related to the plan. Under that criteria, the *Noyola v. Oasis Car Wash, Inc.* case is inapposite since the claim therein did not seek to recover benefits provided under the plan. See *Noyola*, 826 F.Supp. at 210.

**10.** As discussed below although Plaintiff has not properly pled a Jones Act case, even if this Court were to determine a Jones Act case had been pled, a review of the Congressional intent at the time of enactment of ERISA, the cited case law, and the specific enforcement provisions encompassing the governance of ERISA plans clearly override the general provisions of the Jones Act as they apply to an ERISA plan and, thus, this Court must deny Plaintiffs' Motion to Remand.

**11.** The employer of Plaintiff **Angel Romero, Jr.** is **Nevgulmarco Company, Inc.** as evidenced by the "Agreement to Resolve an Employment Dispute through Binding Arbitration". (See attached as "Exhibit A" a copy of "Agreement to Resolve an Employment Dispute through Binding Arbitration" which is incorporated herein). In the prefatory paragraph of that agreement, it clearly and unequivocally states that

Angel Romero, Jr. is an employee of **Nevgulmarco Company, Inc.** Further, in paragraph 8 of the agreement, it defines the "Company" as **Nevgulmarco Company, Inc.** the legal entity or establishment that employs the employee. Additionally, Plaintiff **Angel Romero, Jr.**, by signing the agreement in the appropriate place at the end of paragraph 11, acknowledges his employment with **Nevgulmarco Company, Inc.**

12. The Jones Act has application only to a seaman's employer and does not reach the vessel, the employer's affiliates, parent, subsidiaries, suppliers or the suppliers' manufacturers. *California Home Brands, Inc. v. Ferriera*, 871 F.2d 830, 1989 AMC 2099 (9th Cir. 1989); citing *Allen v. United States of America*, 338 F.2d 160, 162 (9th Cir. 1964). ("The Jones Act gives a seaman a right of action *only* against his employer). (Emphasis added). See also 46 U.S.C. 688(a) ("Any seaman who shall suffer personal injury in the course of his employment . . . Jurisdiction . . . shall be under the court of the district in which the defendant *employer* resides or in which his principal office is located."). (Emphasis added). The proof of negligence must show it attributable to the employer, the ship's master, the ship's agent or the ship's employees. *Engle v. Davenport*, 271 U.S. 33, 1926 AMC 679 (1926). See also *Cortes v. Baltimore Insular Lime, Inc.*, 287 U.S. 367, 1933 AMC 9 (1932) (discussing that under the Jones Act vessel operators owe to their *employee-seaman* a somewhat higher duty than the standards to which a shoreside employer may be held) (Emphasis added). Plaintiffs have collectively sued the manufacturer of the sodium metabisulfite, the owner of the ship who was not the seaman's employer, the entity who sold the sodium metabisulfite to the ship and the

employer of the seaman under general maritime negligence claims. The sole cause of action for negligence under the Jones Act is alleged to have been committed by **Carmelita, Inc.**, the owner of the **M/V Carmelita** but not the seaman's employer. Plaintiffs have failed to allege a cause of action under the Jones Act in which relief can be granted and, consequently, this Court should dismiss this cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6) and deny Plaintiffs' Motion to Remand.

13.   The factual basis of the various claims in Plaintiffs' Original Petition against the owner of the ship do not allege a violation of the Jones Act when the seaman is not an employee of the ship. See *Cortes*, 287 U.S. at 377. 46 U.S.C.A. 688(a). See also *Caterpillar v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). (Under the well-plead complaint rule, the plaintiff's complaint as it exists at the time of removal governs the jurisdictional determination). The allegation made against the ship owner is but artful pleading by which Plaintiffs intend to avoid venue of the Federal Courts. See *MSOF Corporation v. Exxon Corporation*, 295 F.3d 485, 490 (5th Cir. 2003). "The 'artful pleading' doctrine is an 'independent corollary' to the well pled complaint rule. *Id.*; citing *Rivet v. Regions Bank*, 522 U.S. 470 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998)." Under this principle, removal is not defeated by a plaintiff's omission to plead necessary federal questions. *Id.* "The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim." *Id.*; quoting *Rivel*, 118 S.Ct. at 925. Therefore, such a pleading is in vain because a trial court must look past the words in the complaint and consider the substance of the claims alleged.

*Rozzell v. Security Servs., Inc.*, 38 F.3d 819, 822 (5th Cir. 1994). In light of the above holdings, when beneficiaries seek to recover benefits from a plan covered by ERISA, their exclusive remedy is provided by ERISA. *Hansen v. Cont'l. Ins. Co.*, 940 F.2d 971, 979 (5th Cir. 1991). Therefore, this Court must deny Plaintiffs' Motion to Remand.

14. The Plaintiffs' Original Petition alleges claims for unseaworthiness (a general maritime claim), a fundamentally defective claim under the Jones Act, a second claim for unseaworthiness, Alter Ego and Single Business Enterprice (sic), product liabilities, strict liability, negligence, breach of warranties, gross negligence and malice, civil conspiracy and damages including punitive damages. All of Plaintiffs' claims seek to recover benefits from an ERISA plan and fall directly within the civil enforcement provision of ERISA which, consequently, turns such claims into an exclusive federal cause of action mandating federal court resolution of such disputes.

15. The removal of Plaintiffs' State Court case and its allegations of common law negligence, gross negligence, maritime negligence under the doctrine of unseaworthiness, breach of warranties, product's liability, conspiracy and malice all relate to the benefits provided the seaman by his employer's ERISA plan and are completely preempted by ERISA. *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 1556 (1987) ("(t)he deliberate care with which the ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive). See also *Epps v. NCNB Texas*,

7F.3d 44, 45 (5th Cir. 1993) ("When a court must refer to an ERISA plan to . . . compute the damages claimed, the claim relates to an ERISA plan"). (Citations omitted). The United States Supreme Court further explained in *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 62-63, 107 S.Ct. 1542, 1546 (1987) that a suit, including common law negligence, by a beneficiary to recover benefits from a covered plan falls directly under § 502(a)(1)(B) of ERISA which provides an exclusive federal cause of action for resolution of such disputes. Thus, this Court must deny Plaintiffs' Motion to Remand.

### Preemption Of Jones Act By ERISA

16. As discussed above, the allegations in Plaintiffs' Original Petition of violation of the Jones Act run only to the **Carmelita, Inc.** While that entity is the owner of the **M/V Carmelita**, the ship upon which the seaman was serving, it was not the seaman's employer. As is shown by "Exhibit A" to the brief of **Nevgulmarco Company, Inc.; Zimco Marine, Inc.; and Carmelita, Inc.** in support of Federal Court jurisdiction, the ERISA plan summary indicates that it was intended to benefit the employees of **Nevgulmarco Company, Inc.** and the acceptance of the ADR agreement by the seaman is shown by "Exhibit A" to this response. Additionally, as shown by the above referenced law case and Congress's intent of complete preemption of claims that seek benefits from an ERISA plan, this Court must retain its subject matter jurisdiction over Plaintiffs' case and deny Plaintiffs' Motion to Remand.

17. While the Jones Act may generally not be removed nor, according to Plaintiffs, preempted, it may not become the sole basis for remand if the allegation of

violation is made against the wrong Defendant. The Jones Act claim against **Carmelita, Inc.** should be dismissed under Federal Rules of Civil Procedure 12(B)(6) for failure to state a claim upon which relief can be granted and Plaintiffs' Motion to Remand must be denied.

### Preemption Of Plaintiffs' State Law Claims

18. Although Plaintiffs assert as a conclusion that they are not alleging any state law claims, a cursory review of the Plaintiffs' Original Petition will show that Plaintiffs' have alleged numerous state law claims. The Supreme Court of the United States has clearly and unequivocally held:

> "Under our decision in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed2d 39, Taylor's common law contract and tort claims are pre-empted by ERISA. This lawsuit relate[s] to [an] employee benefit plan. § 514(a), 29 U.S.C. § 1144(a). It is based upon common law of general application that is not a law regulating insurance. See *Pilot Life Ins. Co. v. Dedeaux*, at 48-51. Accordingly, the suit is pre-empted by § 514(a) and is not saved by § 514(b)(2)(A). *Id.*, at 48, 107 S.Ct. at ----. Moreover, as a suit by a beneficiary to recover benefits from a covered plan, it falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes. *Id.*, at 56.
>
> "The century-old jurisdictional framework governing removal of federal questions cases from state into federal courts is described in Justice BRENNAN's opinion for a unanimous Court in *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). By statute 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.' 28 U.S.C. § 1441(a). One category of cases over which the district courts have original jurisdiction are 'federal question' cases; that is, those cases 'arising under the Constitution, laws, or treaties of the United States.' 28 U.S.C. § 1331. It is long settled law that a cause of

action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law. *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & Nashville R. Co. v. Mottley, supra*. The 'well-pleaded complaint rule' is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts. *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal., supra*, 463 U.S., at 9-12, 103 S.Ct., at 2846-48.

"Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court. *Gully v. First National Bank, supra*. One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress **_may so completely_** pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character. For 20 years, this Court has singled out claims pre-empted by § 301 of the LMRA for such special treatment. *Avco Corp. v. Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (Emphasis added).

"The necessary ground of decision [in *Avco*] was that the preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contacts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301. *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal., supra*, 463 U.S., at 23, 103 S.Ct., at 2853 (footnote omitted)." *Taylor*, 481 U.S. at 62-63.

19.   Furthermore, as recently as 2002 the Fifth Circuit held in *Haynes v. Prudential Health Care*, 313 F.3d 330, 333-34 (5th Cir. 2002) that:

"[T]here are two types of ERISA preemption: complete and express preemption. In general, complete preemption exists when a remedy falls within the scope of or is in direct conflict with ERISA § 502(a), and therefore is within the jurisdiction of federal court. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Whether state law negligence claims are completely preemption by § 502(a) primarily answers questions of jurisdiction. *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999). As this Circuit has stated, section 502(a) "functions as an exception to the well-pleaded complaint rule; 'Congress may so

completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.' Section 502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action." (quoting *Metropolitan Life Ins. Co.*, 481 U.S. at 64-65, 107 S.Ct. 1542). *Id.* 'Unlike the scope of § 502(a)(1)(B), which is jurisdictional and creates a basis for removal to federal court, § 514(a) . . . governs the law that will apply to state law claims, regarding of whether the case is brought in state or federal court.'

"Express preemption exists when a state law or claim 'relates to' ERISA plans unless it 'regulates insurance' under § 514(a). *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). In pertinent parts, the statutes reads:

> Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supercede any and all state laws insofar as they may not or hereafter *relate* to any employee benefit plan described in § 4(a) and not exempt under § 4(b).

"ERISA § 514(a) (emphasis added). This preemption provision contains a savings clause in subsection (b) which states that 'nothing in this title shall be construed to exempt or relieve any person from any law of any State which *regulates insurance*, banking, or securities.' ERISA § 514(b)(2)(A) (emphasis added)."

20. In short, Plaintiffs' lawsuit relates to his employee benefit plan provided to **Angel Romero, Jr.** through his employer, **Nevgulmarco Company, Inc.** under 514(a) because the allegations contained in it are common law tort claims which do not specifically regulate insurance so as to save the lawsuit from ***express preemption*** under § 514(b). Further, Plaintiffs are seeking remedies which are in direct conflict with § 502(a) or fall within the scope of § 502(a) and are, therefore, ***completely preempted*** by ERISA. Consequently, this Court has no alternative but to deny Plaintiffs' Motion to Remand.

**21.** Alternatively, should this Court determine one of the claims Plaintiffs have alleged does not fall within Federal Court subject matter jurisdiction, this Court still has subject matter jurisdiction of the other claims and can exercise pendent jurisdiction over such claim in order to avoid the needless waste of judicial resources.

Defendants pray the Plaintiffs' motion to remand be denied and that the Jones Act cause of action against **Carmelita, Inc.** be dismissed.

DATED:  November 10, 2003.

>   Respectfully submitted,
>
>   **ATTORNEYS FOR DEFENDANTS,
>   NEVGULMARCO COMPANY, INC. and CARMELITA, INC.:**
>
>   **FLEMING & HERNANDEZ, P.C.**
>   1650 Paredes Line Road, Suite 102
>   Brownsville, Texas  78521-1602
>   Telephone:  (956) 982-4404
>   Telecopier:  (956) 982-0943
>
>   By: _/s/ Tom Fleming_
>   **Tom Fleming**
>   SBOT No. 07133000
>   Federal I.D. No. 1188
>
>   **Jeffrey G. Mathews**
>   SBOT No. 24013115
>   Federal I.D. No. 24499

Respectfully submitted,

**ATTORNEYS FOR DEFENDANT,
ZIMCO MARINE, INC.:**

**Jaime Saenz**
SBOT No. 17514859
Federal I.D. No. 7630

**RosaMaria Villagomez-Vela**
SBOT No.24008210
Federal I.D. No. 22983

**RODRIGUEZ, COLVIN & CHANEY, L.L.P.**
1201 East Van Buren Street
P. O. Box 2155
Brownsville, Texas  78522
Telephone:  (956) 542-7441
Telecopier:  (956) 541-2170

## CERTIFICATE OF SERVICE

I certify that true and correct copies of the foregoing **DEFENDANTS' RESPONSE TO MOTION TO REMAND AND BRIEF IN SUPPORT** were served on <u>November 10, 2003</u> in the manner(s) indicated below upon the following Counsel:

**CO-COUNSEL FOR PLAINTIFFS:**
Mikal C. Watts; Ray R. Marchan
WATTS LAW FIRM, L.L.P.
1926 East Elizabeth Street
Brownsville, Texas 78520
<u>(CERTIFIED UNITED STATES MAIL, R.R.R., #7002 1000 0005 1026 8352)</u>

**CO-COUNSEL FOR PLAINTIFFS:**
Ernesto Gamez, Jr.
LAW OFFICES OF ERNESTO GAMEZ, JR.
Justice For All Building
777 East Harrison Street
Brownsville, Texas 78520
<u>(CERTIFIED UNITED STATES MAIL, R.R.R., #7002 1000 0005 1026 8345)</u>

**CO-COUNSEL FOR DEFENDANT, UNIVAR USA, INC.:**
Stan Perry
HAYNES AND BOONE, LLP
1000 Louisiana, Suite 4300
Houston, Texas 77002-5012
<u>(CERTIFIED UNITED STATES MAIL, R.R.R., #7002 1000 0005 1026 8338)</u>

**CO-COUNSEL FOR DEFENDANT, UNIVAR USA, INC.:**
Michael Rodriguez
MICHAEL RODRIGUEZ, P.L.L.C.
1000 East Madison
Brownsville, Texas 78520
<u>(CERTIFIED UNITED STATES MAIL, R.R.R., #7002 1000 0005 1026 8321)</u>

**COUNSEL FOR DEFENDANT, ZIMCO MARINE, INC.:**
Jaime A. Saenz; RosaMaria Villagomez-Vela
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
<u>(CERTIFIED UNITED STATES MAIL, R.R.R., #7002 1000 0005 1026 8314)</u>

_/s/ Tom Fleming_
Tom Fleming

# Agreement to Resolve An Employment Dispute Through Binding Arbitration

This document is a voluntary Agreement between _Angel J. Romero Jr_ an applicant or an employee of NEVGULMARCO COMPANY, INC., whose printed name and signature appear on the last page of this document (referred to as the "Employee") and NEVGULMARCO COMPANY, INC. (referred to as the "Company" and defined in Section 8 of this Agreement.)

### 1. What is binding arbitration?

Binding Arbitration is a process in which two parties in a legal Dispute select a disinterested party to hear and evaluate evidence and make a judgment. The arbitrator's decision (or appellant arbitrators' decision in the event of an appeal) is final and binding on both parties. Arbitrators have the same authority as judges to resolve disputed claims and grant appropriated relief. The arbitrator uses procedures similar to court procedures, and all decisions are made according to the same principles of law.

### 2. Why enter into an arbitration agreement?

The parties are voluntarily entering into this Agreement in order to quickly resolve through Binding Arbitration rather than court litigation any legal Dispute arising under the employment relationship including actions for which the Employee may be separated from the Company, however unlikely such Termination may be. Arbitration is economically desirable for an Employee because the Company pays approximately 90% of the cost while total Employee fees are capped at a maximum amount, as detailed in **THE ADR PROGRAM** booklet. Furthermore, if a final binding decision is in favor of the Employee, the Company will pay the Employee's share of the filing fees. Both parties believe it will be faster and less expensive to resolve such a Dispute through Binding Arbitration.

### 3. What does this Agreement mean?

This arbitration Agreement means that the Employee and the Company both agree that Internal Review, Mediation and Binding Arbitration will be the exclusive method used to resolve any legal Disputes arising under the employment relationship including the Employee's Termination from the Company. Both the Company and Employee exchange mutual promises that they will not seek to resolve any Dispute by filing a lawsuit, participating as a plaintiff in a lawsuit, or seeking damages in a lawsuit filed by another individual or as a member of a class action filed in any federal, state, county or municipal court. This process does not preclude an Employee from filing a charge of discrimination with a state or federal administrative agency such as the Equal Employment Opportunity Commission. Using the procedures provided here, and described in the Rules of arbitration, the Employee and the Company agree that each has the tools needed to resolve any Legal Claims and Dispute arising under the employment relationship.

Employee and Company agree that signing and entering into this Agreement or, in the alternative, being subject to the Company's policy ("Policy") set forth in **THE ADR PROGRAM** requiring the submission to Binding Arbitration of all Legal Claims described in this Agreement and Policy, is a condition of employment. Employee and Company further agree that the exchange of the mutual promises referenced above and the Company's offer of employment and Employee's voluntary acceptance to begin and/or continue his/her employment after signing this Agreement, or being notified in writing of the application of the Policy to Employee requiring submission to Binding Arbitration of all Legal Claims described in the Agreement and Policy, constitute adequate consideration for this Agreement and the application of the Agreement and Policy to Employee.

### 4. What kind of claims will be covered?

This Agreement applies to all legally protected rights arising under the employment relationship now or in the future including a Dispute over Termination. This Agreement also applies, but is not limited to the following Legal Claims, timely made, which could have arisen out of the Employee's employment relationship:

EXHIBIT NO. A

- Discrimination on the basis of race, sex, religion, national origin, age, disability, or any other unlawful basis
- Harassment on the basis of race, sex, religion, national origin, age, disability, or any other unlawful basis.
- Retaliation for filing a protected claim for benefits, e.g., worker's compensation, or exercising protected rights under any statute.
- Violations of any other federal, state, county, municipal, or other governmental constitution, statute, ordinance, regulation, public policy, or common law, affecting economic terms of employment *except statutory claims for unemployment benefits.*
- Personal injuries arising from a Termination or during the employment relationship *except* those covered under a statutory worker's compensation system.
- Any dispute concerning this Agreement including a claim over the arbitrability of the dispute.
- Breach of any express or implied contract, breach of a covenant of good faith and fair dealing, and claims of wrongful termination or constructive discharge (i.e. a former Employee claims he or she was forced to resign).
- Breach of a common law duty of loyalty or its equivalent.
- Exceptions to the employment-at-will doctrine under applicable law.

The only claims NOT covered are claims for ERISA benefits already subject to a separate arbitration agreement contained in summary plan description (SPD) documents, claims for unemployment insurance compensation, worker's compensation and injunctive relief including, but not limited to, unfair competition, intellectual property, trade secrets and confidential information.

5. **Understanding of rights.**

This Agreement applies only to the method that is used to resolve employment Legal Claims and Disputes. Under this Agreement, each party gains only the right to have the asserted claim resolved through Internal Review, Mediation and Binding Arbitration, and *forgoes the party's right to resolve the Legal Claims and Dispute before a jury or court trial* but does not affect an Employee's ability to file a charge of discrimination with a federal or state administrative agency. No other rights of the Employee or the Company are affected, created, or implied by this Agreement.

- Arbitrators and courts follow similar but sometimes-different procedures, yet apply the same principles of law. Thus, this Agreement determines only the place (forum) where the claim shall be heard and will not affect the legal principles used to resolve any claim asserted by the parties.
- Any arbitrator selected will have the authority to grant any damages or any relief that would be available in court.
- The arbitrator's findings will be issued in a written decision with supporting rationale. The arbitrator's decision (or appellant arbitrators' decision in event of appeal) shall be final and binding on both parties.
- Nothing in this Agreement changes or in any manner modifies the parties' employment relationship or employment-at-will status; that is, the parties can each end the relationship at any time for any lawful reason with or without cause. The parties agree that this is their complete agreement on the subject of the duration of employment and right to terminate the employment relationship.

6. **Procedures.**

Any employment Dispute and Legal Claims covered under Section 4 of this Agreement will be resolved through Internal Review, Mediation and, if necessary, by an arbitrator who will be selected and mutually agreed-upon by the Employee and the Company according to the process described in the National Rules for the Resolution of Employment Disputes (effective 1/1/99 or as uniformly amended from time to time) issued by the American Arbitration Association (AAA) and the Supplemental Rules. By signing this Agreement, the Employee acknowledges that he/she has received a copy of the AAA's National Rules for the Resolution of

Employment Disputes and the Supplemental Rules (together referred to as the "Rules"), which are incorporated herein and govern any arbitration conducted pursuant to this Agreement.

## 7. Enforcing this Agreement.

The Federal Arbitration Act governs this Agreement. If the Federal Arbitration Act is determined not to apply, the Uniform Arbitration Act (if any) of the State where the Company is incorporated shall apply as it now exists or may be amended.

Any Dispute concerning this Agreement – the way it was formed, its applicability, what it means, the enforceability, or any claim that all or part of this Agreement is void or void able – is subject to arbitration under the Agreement. Either party may bring an action in court to compel arbitration under this Agreement, to enforce a final arbitration award, or to dismiss any lawsuit seeking to resolve a Legal Claim that the parties have agreed, by application of the Policy and/or by signing this Agreement, to submit to Binding Arbitration.

Both the Employee and the Company are obligated to accept the results of arbitration as final and binding, and subject to court review only in circumstances applicable under the Federal Arbitration Act or applicable law of the State in which the Company is incorporated. If any part of this Agreement is determined to be void or otherwise unenforceable, the rest of the Agreement will be valid and enforceable. In the event a court determines that arbitration should not be the exclusive forum for the dispute, exhaustion of Internal Review, Mediation and Binding Arbitration shall be a condition precedent to the institution of any other legal proceeding relating to the Dispute.

## 8. Definitions of terms.

The *Company* refers to the legal entity or establishment that employs the Employee, as well as its successors and all past and present subsidiaries, affiliated companies, and its officers, directors, employees, managers, supervisors and agents in their personal or official capacities. The signature or printed name of the Company representative authorized to enter into this Agreement appears on the last page of this document.

*Binding arbitration* means that a hearing (or appellate) arbitrator(s) selected jointly by the Employee and the Company is authorized to hear and consider evidence concerning a covered Legal Claim or Dispute and issue a final and binding decision, providing all remedies available under applicable law.

*Termination* means a Company-initiated separation of an involuntary nature including any allegation of constructive discharge where a former Employee claims he or she was forced to resign.

*Legal Claims* or *Dispute* refers to those legally protected rights covered under Section 4 of the Agreement.

*THE ADR PROGRAM* refers to An Alternative Dispute Resolution Program- The Right Way™ used by the Company and its employees to resolve disputes related to the employment relationship.

The *Policy* is set forth in THE ADR PROGRAM and refers to a Company requirement for the submission to Binding Arbitration of all Legal Claims or Disputes described in Section 4 of this Agreement

The *Employee* refers to the individual entering into or subject to this Agreement and Policy and includes the individual's successors, assigns, beneficiaries, heirs, children, spouses, parents and legal representatives.

The *AAA* refers to the American Arbitration Association.

The *Agreement* refers this Agreement to Resolve An Employment Dispute Through Binding Arbitration.

The *Rules* refer to the AAA's National Rules for the Resolution of Employment Disputes as currently published or as amended from time to time and the Supplemental Rules.

*Internal Review* refers to the first step used by an Employee to raise a Dispute under THE ADR PROGRAM

*Mediation* refers to the second step used by an Employee to resolve a Dispute under THE ADR PROGRAM.

*Supplemental Rules* refers to those rules in addition to the AAA's rules, which govern any arbitration hearing conducted pursuant to this Agreement. The parties to this Agreement agree that the Supplemental Rules shall prevail, control and be applied by the arbitrator to any conflict between the AAA's rules and the Supplemental Rules.

9. **Entire Agreement.**

Except for any arbitration provision (if any) contained in the Company's written ERISA benefit plans, this is the complete agreement of the parties on the subject of arbitration of an asserted employment Dispute and supersedes any prior or contemporaneous oral or written agreements or understandings on this subject. This Agreement is not an employment contract, express or implied, and does not alter the employment at-will relationship between the Company and Employee.

In signing this Agreement, neither the Employee nor the Company is relying on any representation, oral or written, concerning the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

10. **Modification and revocation.**

This Agreement will survive the Employee's termination of employment with the Company. This Agreement can be modified or revoked only by a document signed by the Employee and the Company's highest-ranking officer or agent specifically referencing this Agreement and stating intent to modify or revoke it.

11. **This Agreement is voluntary.**

THE EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS CAREFULLY READ THIS AGREEMENT, THAT HE/SHE UNDERSTANDS IT, AND THAT ALL UNDERSTANDINGS BETWEEN THE EMPLOYEE AND THE COMPANY RELATED TO THE SUBJECTS COVERED IN THIS AGREEMENT ARE CONTAINED IN IT. THE EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS ENTERED INTO THIS AGREEMENT VOLUNTARILY AND WITHOUT DURESS, PRESSURE OR COERCION FROM ANY PERSON. THE EMPLOYEE ACKNOWLEDGES THAT SIGNING THIS AGREEMENT OR, IN THE ALTERNATIVE, BEING SUBJECT TO THE POLICY SET FORTH IN THE ADR PROGRAM REQUIRING THE SUBMISSION TO BINDING ARBITRATION OF ALL LEGAL CLAIMS DESCRIBED IN THIS AGREEMENT AND POLICY IS A CONDITION OF EMPLOYMENT. THE EMPLOYEE UNDERSTANDS AND ACKNOWLEDGES THE APPLICATION OF THE COMPANY POLICY SET FORTH IN THE ADR PROGRAM SHOULD THE EMPLOYEE VOLUNTARILY ACCEPT TO BEGIN AND/OR CONTINUE HIS/HER EMPLOYMENT AFTER BEING NOTIFIED IN WRITING OF THE APPLICATION OF THE POLICY TO THE EMPLOYEE. THE EMPLOYEE ALSO ACKNOWLEDGES THAT HE/SHE HAS ENTERED INTO THIS AGREEMENT AFTER DUE CONSIDERATION, AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE WHICH ARE CONTAINED WITHIN THIS AGREEMENT. THIS IS AN AGREEMENT TO WHICH BOTH PARTIES INTEND TO BE LEGALLY BOUND.

The Employee also acknowledges that he or she has had or will have an opportunity to discuss this Agreement with his or her counsel or attorney and has or will use that opportunity if he or she wishes to do so.

X Angel Romero                  1-8-03
Employee's Signature             Date            NEVGULMARCO COMPANY, INC.

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
Employee's Social Security Number                HARLEY LONDRIE
                                                 Signature or Printed Name of Company Official