United States District Court
Southern District of Texas
FILED

JAN 0 6 2004

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| AVIGAIL MARTINEZ DE ROMERO, Individually, and As Guardian of ANGEL ROMERO, JR., Mentally and Physically Incompetent; ANGEL ROMERO GONZALEZ and GLORIA BADILLO RODRIGUEZ DE ROMERO, The Natural Parents of ANGEL ROMERO, JR.; and LUCILLA DELGADO ROMERO, As Next Friend of ANGEL ROMERO DELGADO and CAROLINA ROMERO DELGADO, Minor Children of ANGEL ROMERO, JR. | * * * * * * * * * * * * * * | |
| vs. | * * | CIVIL ACTION NO. B-03-153 |
| UNIVAR USA, INC.; NEVGULMARCO COMPANY, INC.; ZIMCO, INC.; and CARMELITA, INC., As the Owner/ Operator of The M/V "Carmelita" | * * * * | JURY DEMANDED |

---

**COURT-REQUESTED BRIEF OF REMOVING DEFENDANTS
IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

---

Fulfilling the Court's instruction[1], Defendants file this Court-Requested Brief in Opposition to Plaintiffs' Motion to Remand and show the Court as follows:

**I. Unifying case principle: supremacy of federal interest in ERISA.**

*Arana* and *Roark* apply *Metropolitan*. The Supreme Court framed the question in *Metropolitan* as "whether or not the *Avco* principle can be extended to statutes other than the LRMA [Labor-Relations Management Act] in order to recharacterize a state law complaint displaced by [ERISA's] § 502(a)(1)(B) . . . . " *Metropolitan*, 481 U.S. at 65.

---

[1] The Honorable Andrew S. Hanen, United States District Judge for the Southern District of Texas, Brownsville Division, instructed the parties to brief the applicability of three cases that he identified; to-wit: (1) *Metropolitan Life Ins. Co., v. Taylor*, 481 U.S. 58 (1987); (2) *Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003) (*en banc*); (3) *Roark v. Humana, Inc.*, 307 F.3d 298 (5th Cir. 2002). Such instruction was delivered during a hearing on the beneficiaries' motion to remand. The hearing was held in December, 2003. The Court-requested briefs were due on January 7, 2004. Sequential briefing was not ordered.

Focusing on legislative history, the Court extended *Avco*, *infra*, to ERISA's § 502(a). *Metropolitan*, 481 U.S. at 65-6; 107 S.Ct. at 1547. In sum, the Supreme Court unanimously held in *Metropolitan*, which the Fifth Circuit applies in *Arana* and *Roark*, that the preemptive force of ERISA is equal to the broad, superseding federal interest in labor law recognized in *Avco Corp. v. Machinists*, 390 U.S. 557, 88 S.Ct. 1235 (1968). *Metropolitan*, 481 U.S. at 68; 107 S.Ct. at 1548.

This brief first summarizes the cases. It then analyzes the application of the three cases to the unique facts of this matter at bar.

## II.   *Metropolitan Life Ins. Co. v. Taylor*

### A.   Summary.

*Metropolitan* arose when a General Motors' employee sued for compensatory damages sounding in both tort and contract in state court. *Metropolitan*, 481 U.S. at 62. In addition to presenting claims sounding in tort (mental anguish) and breach of contract, Taylor, the GM employee, also sued for "all benefits and insurance coverages Plaintiff is entitled to." *Id.* He also alleged that he had been wrongfully terminated and that GM had failed to promote him in retaliation for having filed previously a worker's compensation claim. He named both GM and GM's insurance carrier as a defendant. GM and GM's insurance carrier, Metropolitan, removed the suit to federal court. *Metropolitan*, 481 U.S. at 62. The removal alleged federal question jurisdiction over the disability claim by virtue of ERISA and supplemental jurisdiction. The District Court found that the case had been properly removed. *Id.*

The Court of Appeals reversed on the ground that the District Court lacked jurisdiction. *Metropolitan*, 481 U.S. at 63. The Court of Appeals held that "removal was improper where the well-pleaded complaint in this instance failed to raise a federal question." *Taylor v. General Motors Corp.*, 763 F.2d 216, 220 (6th Cir. 1985). In the penultimate paragraph of the opinion of the Court of Appeals, the Court articulated its

recognition "that as a general rule courts permit removal to federal court, notwithstanding the well-pleaded complaint doctrine, where an employee in a labor case attempts to assert a common law cause of action against his employer." *Taylor*, 763 F.2d at 220 (citing *Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d 1468 (9th Cir. 1984).[2]

On review to the Supreme Court, the Court held that plaintiffs' claims were not only preempted by § 514 of ERISA but also displaced by § 502 of ERISA.[3] *Metropolitan*, 481 U.S. at 62-3; 107 S.Ct. at 1546. The Court held that the *Avco* doctrine applies to recharacterize a state law complaint displaced by § 502(a)(1)(B) as an action arising under federal law. *Metropolitan*, 481 U.S. at 66. The Court thought that Congress' intent to preempt completely the subject area covered by ERISA was established by the language of the clause granting jurisdiction to federal courts set forth in ERISA's § 502(f) [29 U.S.C. § 1132(f)]. *See Metropolitan*, 481 U.S. at 66. The Court concluded that ERISA's § 502(f) closely resembled § 301 of the Labor Management Relations Act. Central to the Court's conclusion is the legislative history of ERISA's civil enforcement provisions. The Court quoted language from the Conference Report on ERISA's civil enforcement provisions of § 502 as follows:

> All such actions [with respect to suits to enforce ERISA benefit rights under the plan or to recover benefits under the plan] in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947.

---

[2] The final sentence of the Court of Appeals expressing its nutshell analysis of the matter in *Taylor* follows: "We, like the Fifth Circuit in *Powers[v. So. Central United Foods Comm'l Workers Unions*, 719 F.2d 760 (5th Cir. 1983)] and *Eitmann [v. New Orleans Public Service, Inc.*, 730 F.2d 359 (5th Cir.) *cert. denied*, 105 S.Ct. 433 (1984)] find cases implicating ERISA to differ from those involving the federal labor law generally." In light of the Supreme Court's reversal of the Court of Appeals' panel that wrote that nutshell summary, it is now proper to suggest that that cases implicating ERISA are of the same federal import as federal labor law generally. *See, generally, Metropolitan*, 481 U.S. 58.

[3] While the Supreme Court will likely ultimately hold as correct the Fifth Circuit's conclusion in *Arana, supra*, that "only" § 502(a) preemption is necessary to conclude that an ERISA conflict raises a federal question, nevertheless, *Metropolitan* provides the current precedent: both § 514 conflict and § 502 "complete" preemption is required for a proper conclusion that federal question jurisdiction exists. *See* 28 U.S.C. § 1131; *Metropolitan*, 481 U.S. 67-8; 107 S.Ct. 1548.

*Metropolitan*, 481 U.S. 65-66 (quoting H.R. Conf. Rep. No. 93-1280, p. 327 (1974) (emphasis omitted)).

The Court rejected the plaintiffs' argument that removal was improper because it determined that the touchstone of federal removal jurisdiction is not the "obviousness" of the preemption defense but, rather, the intent of Congress. *Id.* In sum, the Court opined that § 502(a)(1)(B) suits should be regarded as "arising under" federal law in the same manner as LRMA § 301 suits. *Metropolitan*, 481 U.S. at 67.

### B. Analysis of Applicability of *Metropolitan*.

#### 1.

#### The facts of *Metropolitan* are congruent with those of the matter at bar.

The facts of *Metropolitan* and those on record in this matter are congruent. In each the employer "set up an employee benefit plan subject to the provisions of ERISA for its salaried employees;" *Metropolitan*, 481 U.S. at 61; 107 S.Ct. at 1545; in each the plaintiff "was involved in a job-related . . . accident;" *see id*; and in each the plaintiffs brought both breach of contract and negligence claims. *See Metropolitan*, 481 U.S. at 62; 107 S.Ct. at 1545. Specifically, in *Metropolitan* the employee suffered an injury that he alleged was attributable to General Motor's breach of contract and negligence. *Id.* Likewise, in the matter at bar, the Beneficiaries bring breach of contract and negligence claims to recover for the employee's injuries. *See* Plaintiffs' Original Petition.

Taylor's counsel in *Metropolitan* also named GM's insurance carrier as a defendant, in addition to naming GM. This dynamic was due to the elongated time frame of the claims-administration dispute in *Metropolitan*. However, the contextual time frame of the Beneficiaries' action in suing only five weeks (August 28, 2003) after the purported injury (July 21, 2003) in this matter has circumvented the proper claims-administration

process.[4] *See* Plaintiffs' Original Petition. In this matter the Beneficiaries' premature suit has prohibiting the formal, contracted-for claims process from unfolding. Thus, the Beneficiaries in this matter have thereby avoided the necessity of directly naming the insurance company.[5]

### 2. § 514 Preemption applies both in *Metropolitan* and to this matter at bar.

In this matter as in *Metropolitan* the common law claims "related to" an employee benefit plan. *See Metropolitan*, 481 U.S. at 62; 107 S.Ct. at 1546. Both the District Court and the Supreme Courts in *Metropolitan* recognized that the common law state claims were conflict preempted by ERISA. *See id.* Similarly, in this matter the removing defendants have shown this Court that the Beneficiaries' claims are conflict preempted by § 514 of ERISA. *See* Plaintiffs' [Nevgulmarco Company, Inc. *et alii*] Original Petition, pp. 1-5; Plaintiffs' Brief in Support of Jurisdiction, pp. 4-7; and Defendant Zimco Marine, Inc's Supplemental Response to Motion to Remand, pp. 3-4.

---

[4] One of the many independent factual foundations supporting federal question jurisdiction premised on complete ERISA preemption is that the Beneficiaries' suit seeks remedies from the plan without any administrative ruling on the Beneficiaries' right to receive such benefits. This is particularly applicable given the unusual and unfortunate facts of the comatose employee-beneficiary. Indeed, complex questions as to proper interpretation of the terms of the ERISA plan and its administration with respect to the facts at hand have also been overlooked. One specific example is the question of the application of the doctrine of maximum medical improvement from ERISA plan funds, given the unfortunate fact of a comatose employee. *See Farrell v. United States*, 336 U.S. 511, 69 S.Ct. 707 (1949) (holding that a shipowner only owes maintenance and cure to an injured seaman until the maximum cure is obtained or until the seaman is so far cured as is possible.) Since the *Farrell* decision courts have phrased the termination point of maintenance and cure payments in different ways, but the essence of the rule is that a shipowner is only responsible for a seaman's maintenance and cure until the seaman has reached maximum medical recovery. *See, e.g., Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996 (payments terminate when it is "probable that further treatment will result in no betterment in the claimant's condition").

[5] In *Metropolitan* the plaintiff not only brought tort and contract claims, as in this matter, but also sought relief for "all benefits and insurance coverages Plaintiff is entitled to." *Metropolitan*, 481 U.S. at 62; 107 S.Ct. 1545. Beneficiaries' experienced counsel in this matter, wise in the ways of avoiding federal preemption, has made a strategic decision neither to name the employer's plan as a defendant (even though the remedies that the Beneficiaries seek fall within the concentric circles surrounding the federal bulls' eye of complete ERISA preemption) nor to denominate or identify any causes as claims as one to "recover benefits" or to "clarify" rights to future benefits, in order to avoid falling directly within the bulls' eye of § 502(a).

Beneficiaries' claims for on-the-job accident related medical expenses and wage replacement are governed in this cause by Nevgulmarco's ERISA plan. That ERISA plan provides for wage replacement and compensation for occupational injuries. *See* page 2 of Exhibit A, attached to Plaintiff's Brief In Support of Jurisdiction, previously filed. Because the Beneficiaries "seek benefits under" Nevgulmarco's ERISA Plan, their claims clearly "relate to" Nevgulmarco's ERISA Plan, as that phrase, "relate to," is used in conflict preemption cases. *E.g., Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493 (5th Cir. 1999). Further, because the Beneficiaries' suit, itself, is a declaration that the plan's arbitration clause does not apply, the state suit impliedly seeks a judgment in the absence of the application of the plan's arbitration clause. *See* 29 U.S.C. 502(a)(3). In sum, the Beneficiaries' claims for medical expenses, lost wages and earning capacity are conflict preempted by ERISA's § 514.[6] *See Metropolitan*, 481 U.S. at 63-4.

### 3.   § 502(a) Preemption.

#### a.

The Romeros' (hereinafter "Beneficiaries") Original Petition filed in Texas State Court seeks a judgment requiring the nonsubscribing employer to pay all or some of the past and future medical care. *See* Plaintiffs' Original Petition.  By filing suit, the Beneficiaries usurped the plan's decision as to whether or not Mr. Romero is entitled to ERISA benefits under the plan into a claim for money damages. Thus, the Beneficiaries seek through the Texas state courts to recover benefits and, in addition, to clarify Mr. Romero's right to future benefits as those terms are defined by § 502 of ERISA's civil enforcement provisions. *See* 29 U.S.C. § 1132(a). Moreover, to the extent that the

---

[6] Even if a state law was not intended to impact an ERISA plan and impacts it only indirectly, a state law can still be considered to "relate to" an ERISA plan. *Rokohl v. Texaco, Inc.*, 77 F.3d 126, 129 (5th Cir. 1996). Therefore, even if a state law or state claims do not directly address ERISA plans, such will be conflict preempted where they apply to an ERISA plan in a case at issue. *Id.* In the interest of judicial economy the briefing of the defendants as to § 514 conflict preemption is incorporated in this section as if set forth verbatim. *See* Plaintiffs' [Nevgulmarco Company, Inc. *et alii*] Original Petition, pp. 1-5; Plaintiffs' Brief in Support of Jurisdiction, pp. 4-7; and Defendant Zimco Marine, Inc's Supplemental Response to Motion to Remand, pp. 3-4.

Beneficiaries' suit is characterized as one to either obtain "appropriate equitable relief" or "to enforce any provisions of . . . the terms of the plan" this Court has **exclusive** jurisdiction pursuant to 29 U.S.C. § 1132(e)(1). *See* 29 U.S.C. §§ 502(a)(3)(B) & 502(a)(3)(B)(ii).

Nevgulmarco *et al.* do not seek to federalize every nonsubscriber negligence case under ERISA. Rather, because of the specific, unique facts on record in this matter -- the nature of the employee's comatose injury, the relief requested by the Beneficiaries, and the distinct and specific terms of the ERISA plan -- it can be reasonably concluded that the Beneficiaries seek relief within the terms of § 502(a).

**b.**

**§ 502(a) Preemption: Suit challenges the enforcement of a contractually binding ERISA plan arbitration clause.**

**i.**

The employers' ERISA plan protecting the injured beneficiary requires arbitration. The plan's language in this matter is as follows: "[Any] claim or dispute arising out of any accident or occurrence will be resolved exclusively through alternative dispute resolution procedures, including final arbitration."[7] *See* Summary Plan Description for Nevgulmarco Co, Inc., p. 7 of Ex. "A," attached to Plaintiff's [Nevgulmarco Company, Inc., *et alii*] Brief in Support of Jurisdiction; ; *see also* p. 4 (arbitration paragraph) of same. Given this undisputed, contractually-binding, plan-required arbitration clause in the plan; how and why do the Beneficiaries' claims in this removed matter fall within the scope of the civil enforcement provisions "to enforce . . . or recover benefits" with respect to the employer's ERISA plan?

---

[7] The plaintiffs, that is to say, those seeking benefits under the employer's ERISA plan (herein "Beneficiaries") do not dispute the existence, applicability, or enforceability of the occupational injury benefit plan (No. 007275-OA; effective July 1, 2002) of the employer as an ERISA-qualified plan to the beneficiaries' claims herein. *See* "Ex. A," attached to the Plaintiffs' [Nevgulmarco Co., Inc. *et alii*] Brief in Support of Jurisdiction. The employee, Angel Romero, Jr., also signed an agreement to resolve any employment dispute other than those relating to disputes about the ERISA plan through alternative dispute resolution ("ADR"). *See* Ex's "A" and "B," attached to

### ii.

The record in this matter shows that the language of the arbitration clause in the ERISA plan is broad. *See id.* Such language precludes any lawsuit -- of whatever claims -- relating to the incident giving rise to the cause of action. *See id.*[8] Contrary to the arbitration clause, the Beneficiaries have sued. Specifically, it is the Beneficiaries' suit, itself, rather than the denomination of the various causes of action in the suit that offends the federal interest in the uniformity of the enforcement of arbitration agreements in ERISA plans.[9] *See, generally, Avco*, 390 U.S. 557. In other words, the Beneficiaries' attempt to recover outside the ERISA plan without first complying with the arbitration requirements of the plan offends the legitimate expectation of the defendant-employers herein to the enforcement of the ERISA plan. *See id.* In the final analysis, just as management's expectation in enforcing the no-strike clause in the labor contract in *Avco, supra,* was an issue found to be essentially federal in nature; likewise, the issue of the enforceability of the arbitration clause in the parties' agreed-upon ERISA plan in this matter is necessarily federal in nature. *See Metropolitan*, 481 U.S. at 67. In fact, the language of the Supreme Court in *Metropolitan* is compelling on this crucial point. *See Metropolitan*, 481 at 66; 107 S.Ct. at 1547 ("Unlike the contract rights at issue in *Avco*, the State's rights to enforce its tax levies is not of central concern to the federal statute.") (quoting *Franchise Tax Bd.*

---

Plaintiffs' [Nevgulmarco Co., Inc. *et alii*] Original Petition. The employee's ADR agreement is separate and distinct from his agreement to arbitrate as imposed by the terms of the ERISA plan.

[8] Again, it is essential to recognize that the Plan's arbitration clause (*see* "Ex. A," attached to the Plaintiffs' [Nevgulmarco Co., Inc. *et alii*] Brief in Support of Jurisdiction) is separate and distinct from the agreement of the employer and employee to submit to alternative dispute resolution ("ADR"). *See* "Ex's A & B," attached to the Plaintiffs' [Nevgulmarco Company, Inc., *et alii*] Original Petition. The final sentence of the arbitration agreement on page four reads as follows: "The Plan Administrator will also tell you how you can appeal the decision and that you can bring a *civil action* under ERISA." *Id.* (emphasis supplied). The words "civil action" are words of art, referring to a civil action filed exclusively in federal court. The arbitration clause in this matter squares the facts with those of *Diaz v. Texas Health Ent. Inc.*, 822 F.Supp. 1258 (W.D. Tex. 1993) (holding that ERISA preempts employee's state negligence claims).

[9] Beneficiaries' causes of action include breach of warranty under Tex. Bus & Com. Code, § 2.314 (West 1994), negligence, gross negligence, and disguised fraud and RICO claims among others. *See* Plaintiffs' Original Petition. In this regard, the Beneficiaries' suit can be recharacterized as one to enjoin the application of the

*v. Construction Laborers Vacation Trust*, 463 U.S. 1, 25-26; 103 S.Ct. 2841, 2854-55 (1983)).

**c.**

**§ 502(a) Preemption: Suit shortcuts the administrative remedies agreed upon in the ERISA plan.**

Not only does the Beneficiaries' suit, itself, call into question the legitimacy of the contractual ERISA arbitration provisions (thereby raising the federal question of the enforceability of ERISA plans' arbitration clauses), but the suit also shortcuts the plan's scheme for the administration of claims arising out of the employment relationship.[10] *See* Plaintiffs' Original Petition. Rather than following the agreed upon terms of the ERISA plan's administrative scheme for submitting claims, the Beneficiaries' suit short-circuits the plan's contractual terms governing claim administration. Thus, the suit denies the enforceability of the contractual terms of the ERISA plan as to administrative claims, just as the state suit in *Avco*, *supra*, attempted to deny the enforceability of the no-strike clause in the collective bargaining agreement. *Metropolitan*, 481 U.S. at 65-9; 107 S.Ct. at 1547-8.

**d.**

**§ 502(a) Preemption: Suit subjects the ERISA plan to varying state standards.**

Finally, given the various states represented by the defendants' employees, absent ERISA preemption, the defendants herein are subject to varying state standards as to claims administration and claims standard. *See Pyle v. Beverly Enterprises-Texas, Inc.*, 826

---

ERISA plan's arbitration clause under 29 U.S.C. § (a)(3)(A) ("A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice . . . under the terms of the plan . . . . "

[10] Maintenance presents a claim equivalent to an **automatic entitlement** from the employer's ERISA plan. The obligation of an employer to pay maintenance and cure, which is based on its employment relationship with the seaman, exists regardless of the fault, *vel non*, of the employer. *See Complaint of Liberty Seafood, Inc.*, 38 F.3d 755 (5th Cir. 1994) *cert. denied* 514 U.S. 1109 (citing *Aguilar v. Standard Oil Co.*, 318 U.S. 724 (1943); other citations omitted). In other words, "[w]hen a seaman becomes ill or injured in the service of his ship, the shipowner must pay him maintenance and cure regardless of whether the shipowner was at fault or whether the ship was unseaworthy." *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995) *cert. denied* 116 S.Ct. 706 (citing *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987).

F.Supp. 206, 210 (N. D. Tex. 1993) (quoting *Hogan v. Kraft Foods*, 969 F.2d 142, 144 (5th Cir. 1982) ("ERISA's civil enforcement remedies were intended to be exclusive so that relief available to plan beneficiaries would not vary from state to state.").

### C.   Conclusion as to the applicability of *Metropolitan*.

In sum, *Metropolitan* extends the reasoning of *Avco, supra,* to suits involving ERISA. *See Metropolitan, supra.* Just as there exists an indisputable federal interest in every labor law question, likewise, the Supreme Court in *Metropolitan* recognizes that same dynamic with respect to questions related to ERISA. *Id.* In this matter at bar, as in *Metropolitan*, the indisputable federal interest in the supremacy of ERISA plan's in the following areas is supreme: a plan's determination (rather than the Beneficiaries) as to the nature of plan remedies, the enforceability of the plan's arbitration clause, permitting a plan's administrative remedies to unfold rather than short-circuiting same by suit, not subjecting either the plan or its administrator to various state standards, and complex questions of plan administration as to the application of the doctrine of maximum medical improvement from ERISA plan funds given the unfortunate fact of a comatose employee -- all these facts urge the conclusion that the Beneficiaries' suit in this matter falls within the civil enforcement provisions of ERISA's § 502(a). *See Metropolitan*, 481 U.S. at 65-9; 107 S.Ct. at 1547-8.

## III.   *Arana v. Ochsner Health Plan*[11]

### A.   Summary.

Plaintiffs in *Arana* based their suit directly and solely on two Louisiana statutes. Both to the minds of plaintiffs' counsel and the first Fifth Circuit panel that reviewed the case, the issue presented solely one asserting state issues. The plaintiffs asserted that one state statute (La. Rev. Stat. Ann. § 22:663 (West 1995 & Supp. 2003)) barred the ERISA plan from asserting any rights to subrogation or reimbursement of health care benefits

---

[11] *Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003) *(en banc)*.

previously paid. *See Arana*, 338 F.3d at 436, n. 3. The plaintiffs in *Arana* asserted that another Louisiana state statute formed the basis for asserting statutory penalties and attorneys' fees for the alleged wrongful assertion of a lien against the tort settlement. *See Arana*, 338 F.3d at 436, n. 4.

On review before the Fifth Circuit sitting *en banc*, the Court reversed the panel. The *en banc* Fifth Circuit unanimously held that ERISA § 514 conflict preemption was not required and that an exception to the well-pleaded complaint rule exists where a "claim that seeks relief 'within the scope of the civil enforcement provisions of § 502(a).' " *Arana*, 338 F.3d at 440 (quoting *Metropolitan Life Ins. Co.*, 481 U.S. at 66) (footnote omitted). The Court in *Arana* summarized their holding as follows: "Simply put, there is complete preemption jurisdiction over a claim that seeks relief 'within the scope of the civil enforcement provisions of § 502(a).' *Arana*, 338 at 440 (citation and footnote omitted).

### B. Analysis of *Arana*

#### 1.

As in *Arana* the claims here purport to be solely state law claims. In *Arana*, the factual context of plan at issue set forth a subrogation clause, whereas in this matter, the Beneficiaries bring their claims in the factual context of an ERISA plan requiring arbitration. *See Arana* at 435, n. 2. The plaintiffs in *Arana* did not present their suit as ones to interpret a subrogation clause in an ERISA plan. Likewise, the Beneficiaries here do not cast their pleading as one challenging the enforceability of the arbitration clause of an ERISA plan. But that is the effect of the remedy that the Beneficiaries seek in this matter. The Beneficiaries seek a remedy that *sub silentio* requests the state court to ignore enforcing the provisions of the arbitration clause in the ERISA plan. *See* Plaintiffs' Original Petition.[12] The *en banc* Fifth Circuit in *Arana* concluded that the plaintiffs'

---

[12] "In federal question case, removal jurisdiction is premised on the substantive law to be applied, i.e., the remedy." *Fogelman v. Tidewater Barges, Inc.*, 747 F.Supp. 348, 355 (E. D. La. 1990).

subrogation claim "can fairly be characterized either as a claim 'to recover benefits due to him under the terms of his plan' or as a claim to enforce his rights under the terms of the plan.' " *Arana*, 338 F.3d at 438 (footnote omitted).  The Fifth Circuit recharacterizes the plaintiffs' claims in the following way:

> As it stands, Arana's benefits are under something of a cloud, for [the defendant] is asserting a right to be reimbursed for the benefits it has paid for his account.  It could be said, then, that although the benefits have already been paid, Arana has not fully 'recovered' them because he has not obtained the benefits free and clear of [the defendant's] claims.  Alternatively, one could say that Arana seeks to enforce his rights under the terms of the plan, for he seeks to determine his entitlement to retain the benefits based on the terms of the plan.

*Arana*, 338 F.3d at 438.

Adopting the language of the Court's recharacterization in *Arana* and applying it to the Beneficiaries claims in this matter leads to the following articulation: the injured employee and his families' benefits are under something of a cloud, for the defendants have denied their claims and asserted the contractual right under the ERISA plan to arbitration.[13]  It could be said, then, that although the benefits may be due under the plan, the Beneficiaries have not fully recovered them because they have not obtained the benefits free and clear of the defendants' claims that the arbitration clause governs all employment related injuries.  Alternatively, one could say that the Beneficiaries seeks to enforce their rights under the terms of the plan, for they seeks to determine their entitlement to obtain benefits based on the terms of the plan but outside the terms of the plan's arbitration clause.

In sum, just as the *en banc* Fifth Circuit in *Arana* fairly characterized Arana's state suit regarding subrogation rights as one falling within the scope of ERISA's civil enforcement provisions, likewise, the same conclusion applies here: that the Beneficiaries' suit attempting an end-run around the terms of the ERISA arbitration clause to obtain remedies to which, by the specific terms of the plan at issue there they are not entitled, can

---

[13] Because of the short-circuiting by the Beneficiaries of the usually applicable claims administration in this matter, the denial of claims can be deemed from the general denial filed by defendants Nevgulmarco Co., Inc., *et al.*, in this matter.

fairly be characterized as a claim to interpret their rights under the terms of the plan. *See Arana*, 338 F.3d at 438. Thus, on the facts of this matter, as in *Arana*, there is complete preemption.

### IV. *Roark*.[14]

#### A.

*Roark* is a consolidated appeal of four separate state suits, all of which had been removed to federal court under ERISA. From the dozens of disparate grounds presented in the consolidated appeal, there exist few strands of factual congruency with the matter at bar. While the Court in *Roark* held that HMO mixed eligibility and treatment decisions were not completed preempted by ERISA, it held that where suit is brought directly against a plan administrator § 502(a) preempts state law. *See Roark*, 307 F.3d at 309. That holding is directly applicable here because in the matter at bar the Beneficiaries allege civil conspiracy, *see* Plaintiffs' Original Petition, pp. 18 - 20, ¶¶ 14.1 - 14.6, seeking to pierce the corporate veil of the defendant corporations by pleading Texas' alter ego doctrine.[15]

To the extent that *Roark* remains valid precedent after *Arana* the reasoning of the Court in *Roark* that concludes that § 502(a) preemption applies where the wording of the ERISA plan is at issue is also applicable. In this matter, the enforcement of the terms of the plan's arbitration clause has been presented *sub silentio*. *See Roark*, 307 F.3d at 309.

---

[14] *Roark v. Humana, Inc.*, 307 F.3d 298 (5th Cir. 2002). *Roark* predates *Arana*. *Roark* requires both § 514 conflict and §502 complete preemption to support federal jurisdiction. *See Roark*, 307 F.3d at 305. To the extent that *Roark* relies on the reasoning with respect to § 514 set forth in *McClelland v. Gronwaldt*, 155 F.3d 507, 516-7 (5th Cir. 1998) its conclusions are erroneous, for the § 514 requirement and analysis of *McClelland* was specifically repudiated in *Arana*. *See Arana*, 338 F.3d at 440, n. 11. In fact, since *en banc* decisions trump those of any panel, it is arguable that *Roark* has little precedential value in light of *Arana*.

[15] This theory of liability challenges, *inter alia*, the actions of the administrator of the ERISA plan herein, Mr. Harley Londrie, and seek to hold him individually responsible. This dynamic of the case at bar distinguishes this case from a split Fifth Circuit decision in which only the single, bare claim of workplace safety (negligence) was at issue, namely, *Hook v. Morrison Milling Co.*, 38 F.3d 776 (5th Cir. 1994), a case purportedly approving the Beneficiaries' position. Closer to the facts in the matter at bar is *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1219 (5th Cir. 1992) ("Superimposing state law fraud standards on the elaborate ERISA provisions . . . would undercut the goal of uniform national regulation in the manner that [ERISA] seeks to prevent.").

*Roark* reaffirms the principle of *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549 (1987) that state law cannot create alternative causes of action for collecting benefits that expand upon ERISA's remedies. *See Roark*, 307 F.3d at 310. This principle is applicable here because the Beneficiaries seek through the Texas state courts to recover benefits and, in addition, to clarify Mr. Romero's right to future benefits as those terms are defined by § 502 of ERISA's civil enforcement provisions. *See* 29 U.S.C. § 1132(a). In other words, because of the nature of Mr. Romero's injury and the specific relief the Beneficiaries are seeking (lifetime medical care), their suit "seeks relief 'within the scope of the civil enforcement provisions of § 502(a).' " *Arana* 338 F.3d 433, 440 (citing *Metropolitan*, 481 at 66). In that sense the Beneficiaries claims and requested relief attempt to convert "the remedy from an equitable one . . . into a legal one for money damages." *Roark*, 307 F.3d at 310 (quoting *Rush Prudential HMO v. Moran*, 122 S.Ct. 21551, 2166 (2002). *See* also *Burgos v. Group & Pension Adm., Inc.*, 286 F.Supp.2d 812, 816 (S. D. Texas 2003) (on similar facts J. Rosenthal held that ERISA preempts "any state law claim seeking similar relief to that provided by § 502(a)(1)(B)" (citing *Arana*, 338 F.3d at 433)).

### B.

**As in *Roark* all roads lead to examining the specific terms of the ERISA plan in this matter.**

On their face the state claims in the matter at bar appear to be grounded solely in state law, as the claims appeared to be in *Arana*. In *Arana* two Louisiana statutes were the source of the state law. *See Arana*, 338 F.3d at 435-6. Here, both Texas common law and statutory claims, including breach of warranty, are alleged. But it is neither the denomination of the state law claims that is determinative of the removal question to be resolved nor the obviousness that the source is state law. *See Metropolitan*, 481 U.S. at 67 ("Since we have found Taylor's cause of action to be within the scope of § 502(a), we must honor that intent whether preemption was obvious or not at the time this suit was

filed.") Rather, it is the relief or remedy that such claims seek that is determinative of the question whether or not the civil enforcement provisions of § 502(a)(1)(B) supplant them. Just as in *Arana* in which the *en banc* Court penetrated the periphery of state claims to identify the core nature of the remedy at issue as one calling for the uniform application of federal law by the name of ERISA, likewise, in this matter, the same conclusion applies on the specific facts that have been plead and set forth (some by judicial estoppel) in this matter. Specifically, the claims for relief asserted by the Beneficiaries in this matter fall within the scope of the terms of the civil enforcement provisions of § 502(a)(1)(B) and § 502(a)(3) thus giving rise to a federal question under 28 U.S.C. § 1331 for the following reasons. Each reason requires an examination of the specific terms of the ERISA plan applicable in this matter, as the Court required in *Roark*.

First, the fact alone that the Beneficiaries have filed suit for injuries covered solely by the employer's ERISA plan, like the strike conducted by the union in *Avco*, is a declaration, in and of itself, that the terms of the ERISA arbitration plan do not apply, just as the strike was a *de facto* declaration that the no-strike clause in the management-union contract did not apply in *Avco*. But the terms of the ERISA arbitration clause in the specific ERISA plan at issue here applies to all employment-related injuries -- a broad arbitration clause that applies by the terms of the ERISA plan summary independent of the terms of the agreement with respect to alternative dispute resolution (ADR). *See* "Ex. A," attached to the Plaintiffs' [Nevgulmarco Co., Inc. *et alii*] Brief in Support of Jurisdiction. Thus, the issue of the enforceability *vel non* of an arbitration clause in an ERISA plan has been impliedly but squarely presented to this Court. Second, the Beneficiaries' suit seeks the remedies, *inter alia*, of benefits exceeding the plan's terms, namely, lifetime medical care. This remedy exceeds the proper interpretation of the terms of the ERISA plan that binds the parties hereto. *See id.* A suit that seeks remedies beyond the relief permitted is prohibited, for state law cannot create alternative causes of action for collecting benefits that

expand upon ERISA's remedies. *See Roark*, 307 F.3d at 310. Again, the terms of the plan are at issue. Third, rather than following the agreed upon terms of the ERISA plan's administrative scheme for submitting claims, the Beneficiaries' suit short-circuits the plan's contractual terms governing claim administration in this matter. *See* "Ex. A," attached to the Plaintiffs' [Nevgulmarco Co., Inc. *et alii*] Brief in Support of Jurisdiction. Fourth, there are complex questions as to the administration of the language of the plan's terms with respect to the claims of a comatose employee.[16] Finally, the disguised, fraud and civil RICO claims against the ERISA administrator of the employer's plan subjects this ERISA plan to multiple state law standards of conduct if not preempted by § 502(a). *See Pyle v. Beverly Enterprises-Texas, Inc.*, 826 F.Supp. 206, 210 (N. D. Tex. 1993) (quoting *Hogan v. Kraft Foods*, 969 F.2d 142, 144 (5th Cir. 1982) ("ERISA's civil enforcement remedies were intended to be exclusive so that relief available to plan beneficiaries would not vary from state to state."). As in *Roark, infra,* these are all issues that require the examination and interpretation of the specific language of the ERISA plan at issue, providing an exception to the well-pleaded complaint rule and raising a federal question under 28 U.S.C. § 1331.

### C.

### *Burgos* reaffirms *Roark's* reasoning.

Reaffirming the legitimacy of the conclusion that the Beneficiaries' suit is completely supplanted by ERISA's § 502(a) is a recent District Court decision from the Houston Division of this Court. *See Burgos v. Group & Pension Adm's, Inc.*, 286 F.Supp.2d 812 (S. D. Tx. 2003). Judge Rosenthal applied the reasoning of *Roark, Arana,* and *Metropolitan* to conclude that a beneficiary's state common law and statutory claims, including breach of contract, were preempted by ERISA's § 502(a). *See Burgos,* 286 F.Supp.2d at 817-8. Judge Rosenthal writes as follows:

---

[16] See footnote 4, *infra*.

> ERISA section 502(a)(1)(B) completely preempts Burgos's state common law contractual and extracontractual claims against the defendants because Burgos seeks to recover benefits allegedly due under the Plan

*Burgos*, 286 F.Supp.2d at 817 (citations omitted). *Burgos* was brought by an employee against her employer and the employer's ERISA plan. The employee sued after benefits due under an ERISA plan were wrongfully denied. She asserted state statutory causes of action under the Texas Insurance Code, the Texas Deceptive Trade Practices Act, and violations of §§ 17.46 & 17.50 of the Texas Business and Commerce Code. *See Burgos*, 286 F.Supp.2d at 813. She also brought state common law cause of action including negligence, negligence *per se*, intentional infliction of emotion distress, breach of the duty of good faith and fair dealing, and breach of contract. *Id*. She alternatively sought a right to recover under ERISA. *Id*. The employee sought actual and punitive damages. *Id*.

The defendants moved to dismiss the state law claims, asserting ERISA preemption. *Id*. Judge Rosenthal agreed with the defendants' analysis that *Metropolitan, Arana, Roark,* and numerous other precedents resulted in the conclusion that ERISA preempted the employees' state law claims. *See Burgos*, 286 F.Supp.2d at 816-8. As applied in this matter, *Burgos* reaffirms the reasoning of *Roark* and the other cases analyzed herein that the Beneficiaries' claims fall within the scope of the civil enforcement provisions of § 502(a) and therefore raises a federal question under 28 U.S.C. § 1331.

## VI.

### Supplemental Jurisdiction.

Although *Metropolitan, Arana,* and *Roark* apply to the facts *sub judice* to supplant completely state law with § 502(a) of ERISA's civil enforcement provisions, in the unlikely event this Court concludes that the original jurisdiction extends to only some portion of the Beneficiaries' claims, then this Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367. *See* 28 U.S.C. § 1367(a). Applying the four factors set forth in 28 U.S.C. § 1367(c) whereby a district court may decline to exercise supplemental

jurisdiction, there are no novel or complex issues of state law presented in this matter. *See* 28 U.S.C. § 1367(c)(1). The predominant strand of the Beneficiaries' complaint proceeds on the assumption that the terms of the ERISA arbitration plan do not apply; therefore, the question of the interpretation of the ERISA plan, a federal question, is the predominant claim presented herein. *See* 28 U.S.C. § 1367(c)(2). This Court has not yet dismissed any claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). There are no other compelling reasons for declining jurisdiction in this matter. *See* 28 U.S.C. § 1367(c)(4); *see also McClelland v. Gronwaldt*, 909 F.Supp. 457, 464 (E. D. Tx. 1995) ("In fact, splitting the issues between federal ones and state ones would be difficult and judicially inefficient.") *rev'd on other grnds*, 155 F.3d 507 (5th Cir. 1998). Thus, this Court may exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(a).

## VII.

## Conclusion.

Complete preemption under § 502(a) acts as an exception to the well-pleaded complaint rule. *See Metropolitan*, 481. U.S. 64-5. Because of the preeminence of the federal interest -- akin to the federal interest in labor law recognized in *Avco* -- in the uniformity of judicial decisions enforcing ERISA plans and the factual similarities between the facts on the record in this matter and those of *Metropolitan, Arana,* and *Roark, supra*, the Beneficiaries' Motion to Remand should be denied.

Respectfully submitted,

RODRIGUEZ, COLVIN, CHANEY & SAENZ, L.L.P.

By: _____
Jaime A. Saenz
Attorney-in-Charge
State Bar No. 17514859
Federal I.D. No. 7630
RosaMaria Villagómez-Vela
State Bar No. 24008210
Fed'l I.D. 22983
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
Tel: (956) 542-7441
Fax: (956) 541-2170

**ATTORNEYS FOR DEFENDANT,
ZIMCO MARINE, INC.**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the above and foregoing was served upon all counsel of record, by certified mail, return receipt requested, facsimile

