31

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 0 7 2004

Michael N. Milby
Clerk of Court

| | |
|---|---|
| AVIGAIL MARTINEZ DE ROMERO Individually, and As Guardian of ANGEL ROMERO, JR., Mentally and Physically Incompetent; ANGEL ROMERO GONZALEZ and GLORIA BADILLO RODRIGUEZ DE ROMERO, The Natural Parents of ANGEL ROMERO, JR.; and LUCILLA DELGADO ROMERO, As Next Friend of ANGEL ROMERO DELGADO and CAROLINA ROMERO DELGADO, Minor Children of ANGEL ROMERO, JR. | § § § § § § § § § § § § § § § |
| | § |
| VS. | § § |
| | § |
| UNIVAR USA, INC.; NEVGULMARCO COMPANY, INC.; ZIMCO MARINE, INC.; AND CARMELITA, INC. AS THE OWNER/OPERATOR OF THE M/V "CARMELITA" | § § § § § § |

CIVIL ACTION NO. B-03-153

JURY DEMANDED

## DEFENDANTS
## NEVGULMARCO COMPANY, INC.'S AND CARMELITA, INC.'S
## SUPPLEMENTAL BRIEF IN SUPPORT OF JURISDICTION

**Tom Fleming**
State Bar of Texas No. 07133000
Federal I.D. No. 1188
**Jeffrey G. Mathews**
State Bar of Texas No. 24013115
Federal I.D. No. 24499

FLEMING & HERNANDEZ, P.C.
1650 Paredes Line Road, Suite 102
Brownsville, Texas 78521-1602
Telephone:   (956) 982-4404
Telecopier:   (956) 982-0943

ATTORNEYS FOR DEFENDANTS,
NEVGULMARCO COMPANY, INC.
and CARMELITA, INC.

## **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF PERTINENT FACTS
REGARDING FEDERAL DISTRICT COURT JURISDICTION . . . . . . . . . . . . . . . . 2

ARGUMENTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    ERISA Preempts All Plaintiffs' Claims. . . . . . . . . . . . . . . . . . . . . . . . . 3

A.    Plaintiffs Have Already Invoked Federal Subject Matter
    Jurisdiction By Seeking Affirmative Relief Through ERISA's
    Civil Enforcement Provisions. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B.    Plaintiffs' Claims Require Defendants Nevgulmarco
    Company, Inc. And Carmelita, Inc. To Maintain An
    "Ongoing Administrative Program." . . . . . . . . . . . . . . . . . . . . . . 5

    (a).    Defendants Nevgulmarco Company, Inc.'s and
    Carmelita, Inc.'s Employment Injury Plan is an ERISA
    Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    (b).    Defendants Will Be Required To Maintain An
    "Ongoing ERISA Plan Administration." . . . . . . . . . . . . . . . . 8

C.    ERISA Preempts Plaintiffs' State Law Claims That "Relate
    To" Defendants' ERISA Plan. . . . . . . . . . . . . . . . . . . . . . . . . . 11

    (a).    Plaintiffs' Claims Address An Area Of Exclusive
    Federal Concern Under ERISA. . . . . . . . . . . . . . . . . . . . 14

    (b).    Plaintiffs' Lawsuit Concerns The Administration Of
    Payments And/Or Denials Of Plan Benefits. . . . . . . . . . . . 15

    (c).    Plaintiffs Seek Additional Benefits Under The Plan. . . . . . . 16

    (d).    The State Law Claims Affect The Relationship
    Between Traditional ERISA Entities. . . . . . . . . . . . . . . . 17

i

## <u>TABLE OF CONTENTS (cont'd.)</u>

<u>Page</u>

       (e).    Preemption Supported By The Recent Holding In
             *Burgos v. Group & Pension Administration, Inc.* . . . . . . . . . 19

    D.    Defendants Nevgulmarco Company, Inc.'s And Carmelita,
        Inc.'s Response To Plaintiffs' Motion To Remand. . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# INDEX OF AUTHORITIES

**Page**

## Cases

Arana v. Ochsmer Health Plan,
    338 F.3d 433, 437 (5th Cir. 2003)
    quoting Taylor, 481 U.S. at 63-64  . . . . . . . . . . . . . . . . . . . . . . . 13,19

Burgos v. Group & Pension Administrators, Inc.,
    286 F.Supp.2d 812, 817-819 (S.D. Tex. 2003) . . . . . . . . . . . . . . 19,20

Cefalu v. B.F. Goodrich Co.,
    871 F.2d 1290, 1294 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . 12

Corcoran v. United Health Care, Inc.,
    965 F.2d 1321, 1333 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . 15,16

    Corcoran, 965 F.2d at 1330 n.13, 1334 . . . . . . . . . . . . . . . . . . . . . 18

Egelhoff v. Egelhoff, 532 U.S. 141, 146 (2001) . . . . . . . . . . . . . . . . . . . . . 11

    Egelhoff, 532 U.S. at 147
    (quoting Shaw v. Delta Airlines, Inc.,
    463 U.S. 85, 103 S.Ct. 2890 (1983)) . . . . . . . . . . . . . . . . . . . . . . . 12

Fort Halifax Packing Co., Inc. v. Coyne,
    482 U.S. 1, 11, 107, S.Ct. 2211, 2217, 96 L.Ed. 2d 1 (1987) . . . . . . . . 9

    Coyne, 482 U.S. at 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Ginther v. Texas Commerce Bank,
    N.A., 111 F.R.D. 615, 620 (S.D. Tex. 1986)
    citing Rodgers v. Lincoln Towing Serv., Inc.,
    596 F.Supp. 13.27 (N.D. Ill. 1984)
    aff'd. 771 F.2d 194 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . 9

Hartman v. Texaco,
    119 F.Supp.2d 668, 673-74 (S.D. Tex. 2000),
    quoting Coyne, 482 U.S. at 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## INDEX OF AUTHORITIES (cont'd.)

**Page**

### Cases (cont'd.)

*Heimann v. Nat'l. Elevator Indus. Pension Fund,*
    187 F.3d 493, 511 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hollis v. Provident Life & Acc. Ins. Co.,*
    259 F.3d 410, 414 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 14,17

      *Hollis,* 259 F.3d at 416 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hubbard v. Blue Cross & Blue Shield,*
    42 F.3d 943, 946 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 16,18

*Ingersoll-Rand Company v. McClendon,*
    498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990) . . . . 10

*Iwag v Geisel Compania Maratima, S.A.,*
    882 F.Supp. 597, 604-05 (S.D. Tex. 1995) . . . . . . . . . . . . . . . . . . 20,21

*Jones v. Tx. Health Choice,*
    No. 4:02-CV-388, W.L. 302217, at 5-6 (E.D. Tex. 2003) . . . . . . . . . . . 19

*McClelland v. Gronwald,*
    155 F.3d 507, 516 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McManus v. Travelers Health Network,*
    742 F.Supp. 377, 381-82 (W.D. Tex. 1990) . . . . . . . . . . . . . . . . . . . . . 7

*McNeil v. Time Ins. Co.,*
    205 F.3d 179, 189 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      *McNeil,* 205 F.3d at 189-91 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      *McNeil,* 205 F.3d at 190 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Metro Life Ins. Co.. v. Taylor,*
    481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) . . . . . . . . . . . . . 19

*Metropolitan Life Insurance Co. v. Taylor*
    citing *Taylor,* 481 U.S. at 62-66 . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

iv

## INDEX OF AUTHORITIES (cont'd.)

**Page**

### Cases (cont'd.)

*Pilot Life Ins. Co. v. Dedeaux*,
481 U.S. 41, 48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) . . . . . . . . . . . 15

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54-57 (1987) . . . . . . . . . . . 7

*Pilot Life Ins.*, 481 U.S. at 46 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Poirrier v. Nickos Drilling Co.*,
648 F.2d 1063, 1066 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . 21

*Ramirez v. Inter-Continental Hotels*,
890 F.2d 760, 764-65 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Roark v. Humana*,
307 F.3d 298, 305 (5th Cir. 2002)
quoting *Metro Life Ins. Co. v. Taylor*,
481 U.S. 58, 64, 107 S.Ct. 1542, 95 L.Ed. 2d 55 (1987) . . . . . . . 11,12

*Roark v. Humana*, 307 F.3d 298 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . 19

*Rozzell v. Security Servs., Inc.*,
38 F.3d 819, 822 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Salameh v. Provident Life & Acc. Ins. Co.*,
23 F.Supp.2d 704, 718 (S.D. Tex. 1998) . . . . . . . . . . . . . . . . . . . . 15,19

*Tennessee Gas Pipe v. Houston Casualty Insurance Co.*,
87 F.3d 150, 153 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Uncle Ben's v. Hapag - Lloyd Aktiengesellscraft*,
855 F.2d 215, 217 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Walsh v. Seagull Energy Corporation*,
836 F.Supp. 411, 414 (S.D. Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . . 21

v

## INDEX OF AUTHORITIES (cont'd.)

**Page**

### Statutes And Codes

29 U.S.C. § 1002(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,8

29 U.S.C. § § 1002(7)&(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

29 U.S.C. § 1132(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 U.S.C. § 1132(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 U.S.C. § 1132(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 U.S.C. § 1132(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

29 U.S.C. § 1144(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12,18

Texas Business and Commerce Code § 2.314 . . . . . . . . . . . . . . . . . . . 9,14,21

### Other

ERISA § 502(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12,13

ERISA § 502(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Harold K. Watson,
  *Modern Practice Considerations in Maritime*
  *Personal Injury Litigation:  Procedural Weapons for Venue* . . . . . . . . . . 20

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **AVIGAIL MARTINEZ DE ROMERO** | § | |
| **Individually, and As Guardian of** | § | |
| **ANGEL ROMERO, JR., Mentally and** | § | |
| **Physically Incompetent; ANGEL** | § | |
| **ROMERO GONZALEZ and GLORIA** | § | |
| **BADILLO RODRIGUEZ DE ROMERO,** | § | |
| **The Natural Parents of ANGEL** | § | |
| **ROMERO, JR.; and LUCILLA** | § | |
| **DELGADO ROMERO, As Next Friend** | § | **CIVIL ACTION NO. B-03-153** |
| **of ANGEL ROMERO DELGADO and** | § | |
| **CAROLINA ROMERO DELGADO,** | § | **JURY DEMANDED** |
| **Minor Children of ANGEL ROMERO,** | § | |
| **JR.** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **UNIVAR USA, INC.;** | § | |
| **NEVGULMARCO COMPANY, INC.;** | § | |
| **ZIMCO MARINE, INC.;** | § | |
| **AND CARMELITA, INC.** | § | |
| **AS THE OWNER/OPERATOR** | § | |
| **OF THE M/V "CARMELITA"** | § | |

**DEFENDANTS
NEVGULMARCO COMPANY, INC.'S AND CARMELITA, INC.'S
SUPPLEMENTAL BRIEF IN SUPPORT OF JURISDICTION**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Nevgulmarco Company, Inc. and Carmelita, Inc., Defendants herein

(hereinafter "Defendants"), file this supplemental brief in support of jurisdiction of the

United States District Court in the above styled and numbered cause and would

respectfully show the Court as follows:

## STATEMENT OF PERTINENT FACTS
## REGARDING FEDERAL DISTRICT COURT JURISDICTION

1.     Defendants filed a declaratory judgment claim in Federal Court obtaining the above referenced cause number on August 29, 2003 at 3:28 o'clock p.m. Plaintiffs filed a lawsuit in State District Court alleging numerous causes of action approximately one hour later on the same date, August 29, 2003. Prior to the above referenced lawsuits being filed, **Avigail Martinez Duran Romero** filed an Application for Appointment of Guardian for **Angel Romero, Jr.** on August 11, 2003 in Cameron County Court at Law Number Two in Cameron County, Texas due to his alleged incapacitated state. The application was granted on September 10, 2003 and was subsequently amended to be a joint guardianship on November 21, 2003.

2.     The initial guardian for **Angel Romero, Jr.** on September 11, 2003 served a subpoena upon Harley Londrie commanding him to appear for deposition at the Watts Law Firm, L.L.P. on September 17, 2003 at 2:00 o'clock p.m. Pursuant to the Texas Rules of Civil Procedure, Defendants timely objected to the time and place of Mr. Londrie's deposition; and, further, Defendants in this Court filed a motion to stay the proceedings in the Cameron County Court at Law Number Two on September 18, 2003. This Court set the motion to stay hearing on the Cameron County Court at Law Number Two proceedings for September 23, 2003 at 1:00 o'clock p.m. It was at this hearing that Defendants first discovered Plaintiffs had filed a lawsuit in State District Court. During this hearing, at Plaintiffs' request, The Honorable Judge of this Court ordered Defendants to allow Plaintiffs access to

Defendants' insurance policy that related to the allegedly incapacitated **Angel Romero, Jr.** When Defendants provided their counsel a copy of said insurance policy, it was first observed by counsel that Defendants' policy was actually an ERISA Plan. A copy of said policy was provided to Plaintiffs; however, Plaintiffs as beneficiaries and participant(s) have not requested nor have Defendants offered benefits from the ERISA Plan. It is important to note that Plaintiffs have not contended in any of their subsequent pleadings and/or motions that Defendants' policy is not an ERISA Plan.

## ARGUMENTS AND AUTHORITIES

### ERISA Preempts All Plaintiffs' Claims.

**A.** **Plaintiffs Have Already Invoked Federal Subject Matter Jurisdiction By Seeking Affirmative Relief Through ERISA's Civil Enforcement Provisions.**

**3.** To begin Defendants' analysis that Plaintiffs' state law claims are preempted by ERISA and, therefore, properly removed, Defendants believe and urge this Court to determine that Plaintiffs, albeit probably unknowingly, have already invoked this Court's Federal Subject Matter Jurisdiction. In particular, **Angel Romero, Jr.'s** court-appointed guardian attempted to request Defendants **Nevgulmarco Company, Inc.'s and Carmelita, Inc.'s** insurance information that would provide **Angel Romero, Jr.** benefits. (See Plaintiff **Angel Romero, Jr.'s** Motion to Dismiss for Lack of Subject Matter Jurisdiction and Brief in Support at ¶ 1.2). (See also Defendants' Motion to Stay and Brief in Support of Motion to Stay along

---

with all attached exhibits).  (<u>See also</u> attached as "Exhibit A" a copy of Plaintiff's (sic) Motion to Stay Hearing Transcript, p. 4, ll. 23,24).  Plaintiffs attempted to depose Harley Londrie, Defendants **Nevgulmarco Company, Inc.'s and Carmelita, Inc.'s** ERISA Plan Administrator, on September 17, 2003 to gain the above referenced insurance information.  (<u>See</u> "Exhibit A," p. 5, ll. 3-10).  Defendants, pursuant to Texas Rules of Civil Procedure, timely filed an objection to the time and place of Plaintiffs' requested deposition of Harley Londrie and subsequently filed a motion in this Court to stay the proceedings in Cameron County Court at Law Number Two regarding **Angel Romero, Jr.'s** guardianship.  This Court then set said Motion to Stay Hearing for September 23, 2003 at 1:00 o'clock p.m.

4.    It was at this hearing that Plaintiffs expressly requested affirmative relief by and through this Court by requesting the Court to issue an order compelling Defendants to allow Plaintiffs to obtain a copy of Defendants' insurance policy. (<u>See</u> "Exhibit A," p. 4, ll. 23-24; p. 11, ll. 8-16; p. 12, ll. 3-9; p. 16, ll. 2-3). Defendants would request this Court take judicial notice of its ruling on September 23, 2003.  (<u>See</u> "Exhibit A," p. 7, ll. 19-21).  This Court by ruling on Plaintiffs' request for insurance information has invoked Federal Question Subject Matter Jurisdiction by using a civil enforcement remedy pursuant to 29 U.S.C. § 1132(a)(1)(A), 29 U.S.C. § 1132(a)(3) and 29 U.S.C. § 1132(c)(1). As such, Plaintiffs cannot now be seen to urge this Court that it does not have Subject Matter Jurisdiction when they have already utilized the above referenced sections of

ERISA civil enforcement statute as a sword. Therefore, this Court must deny Plaintiffs' Motion to Remand, as this Court has already invoked Federal Subject Matter Jurisdiction.

**B.    Plaintiffs' Claims Require Defendants Nevgulmarco Company, Inc. And Carmelita, Inc. To Maintain An "Ongoing Administrative Program."**

5.    Alternatively, should this Court determine that Federal Subject Matter Jurisdiction has not previously been invoked, Defendants would refer this Court to the following arguments:  As stated in the aforementioned facts, Plaintiffs' and Defendants' counsel first discovered that **Nevgulmarco Company, Inc.'s and Carmelita, Inc.'s** workplace injury plan was an ERISA Plan on September 23, 2003. Thus, Plaintiffs could not have known the benefits that they are seeking from Defendants **Nevgulmarco Company, Inc. and Carmelita, Inc.** would be solely provided by an ERISA Plan. Accordingly, Plaintiffs' Original Petition, in Defendants' opinion, could not have expressly alleged an ERISA cause of action under 29 U.S.C. § 1132(a)(1)(B). Defendants believe this factual situation provides this Court with a case of first impression, as this Court will have to determine whether Plaintiffs' claims implicitly seek affirmative rights that are only available from Defendants **Nevgulmarco Company, Inc.'s and Carmelita, Inc.'s** ERISA Plan; and, as such, a detailed analysis of the Plaintiffs' petition and the case law governing ERISA's preemption of such is necessary. Although Plaintiffs have not disputed that Defendants' plan is an ERISA Plan, Defendants will briefly address that issue in this brief.

**(a).    Defendants Nevgulmarco Company, Inc.'s and Carmelita, Inc.'s Employment Injury Plan is an ERISA Plan.**

6.    Before applying ERISA preemption principles, this Court must first determine whether the Plan involved here is a covered "employee welfare benefit plan" under ERISA.    An employee welfare benefit plan is "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002(1).  To determine whether a particular plan qualifies as an ERISA Plan, the Court examines "whether the Plan (1) exists; (2) falls within the safe harbor exclusion established by the Department of labor; and (3) meets the ERISA requirement of establishment or maintenance by an employer for the purpose of benefitting the plan participants." *McNeil v. Time Ins. Co.*, 205 F.3d 179, 189 (5th Cir. 2000).  Applying these factors to Defendant **Nevgulmarco Company, Inc.'s** Plan, this Court should conclude that the Plan is an employee welfare benefit plan under ERISA.

7.    Under the first factor, an ERISA Plan exists "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *McNeil*, 205 F.3d at 189.  Defendant **Nevgulmarco Company, Inc.** sponsored and purchased the Plan and Harley Londrie will administer the Plan for the benefit of **Nevgulmarco Company, Inc.'s** employees.  (See "Exhibit A" to Plaintiff's (sic) Brief in

Support of Jurisdiction). The Plan provides medical benefits to employees by making payments or reimbursements for covered medical expenses. (See "Exhibit A" to Plaintiff's (sic) Brief in Support of Jurisdiction). Moreover, the "intended benefits, beneficiaries, source of financing and procedures for receiving benefits" are all explained in the Plan. (See "Exhibit A" to Plaintiff's (sic) Brief in Support of Jurisdiction). Thus, the Plan's language establishes the existence of an ERISA Plan. *Id.*

8. For these same reasons, the Defendants' Plan does not fall into ERISA's "safe harbor" exclusion. See eg., *McNeil*, 205 F.3d at 190 (noting that all four requirements of the "safe harbor" provision must be satisfied for the exemption to apply; plan did not fall in "safe harbor" exemption because the employer contributed to the plan). *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54-57 (1987) (finding that state law tort claims, including breach of contract and duty of good faith and fair dealing, are not saved); *Ramirez v. Inter-Continental Hotels*, 890 F.2d 760, 764-65 (5th Cir. 1989) (concluding Tex. Ins. Code Art. 21.21 lawsuit not saved); *McManus v. Travelers Health Network*, 742 F.Supp. 377, 381-82 (W.D. Tex. 1990) (finding Texas DTPA claim not saved). Defendant **Nevgulmarco Company, Inc.** funded the Plan One Hundred (100%) Percent and, as such, Defendants' Plan clearly does not fall into ERISA's "safe harbor" exclusion. (See "Exhibit A" to Plaintiff's (sic) Brief in Support of Jurisdiction).

9.    The Plan also satisfies the third factor it satisfies the requirements of

29 U.S.C. § 1002(1).  The Plan was established and maintained (1) by the employer,

**Nevgulmarco Company, Inc.**, (2) for the benefit of the Plan participants, (3) through

the purchase of insurance, (4) to provide benefits in the event of a covered medical

expense.  (<u>See</u> "Exhibit A" to Plaintiff's (sic) Brief in Support of Jurisdiction).;

<u>See</u> 29 U.S.C. § 1002(1); *McNeil*, 205 F.3d at 189-91 (concluding that health

insurance plan satisfied § 1002(1) requirements because the employer established the

plan; employer paid the initial premium; and the Plan's purpose was to provide the

participants with medical care).  Indeed, the Plan informs participants of (i) their rights

under ERISA; (ii) important ERISA Plan information, such as the Plan sponsor, type of

plan (a welfare benefit plan), and the Plan's Claims Administrator (Harley Londrie); and

(iii) the claim procedures to make a benefits claim.  (<u>See</u> "Exhibit A" to Plaintiff's (sic)

Brief in Support of Jurisdiction).  Given these facts, the Plan is an employee welfare

benefit plan under ERISA.  <u>See</u> 29 U.S.C. § 1002(1); *McNeil*, 205 F.3d at 189-91.

### (b).    <u>Defendants Will Be Required To Maintain An<br>"Ongoing ERISA Plan Administration."</u>

10.    In order to ascertain whether state law claims are preempted by ERISA,

a Court ***must*** look past the words in the complaint and consider the substance of the

claims alleged.  *Rozzell v. Security Servs., Inc.*, 38 F.3d 819, 822 (5th Cir. 1994).

(Emphasis added).  A review of Plaintiffs' Original Petition will show that Plaintiffs

have plead numerous causes of action under maritime law and state law.  Defendants

would respectfully request this Court take notice of Plaintiffs' shotgun approach in

their pleadings is prohibited by Federal Rule of Civil Procedure 11. See *Ginther v. Texas Commerce Bank, N.A.*, 111 F.R.D. 615, 620 (S.D. Tex. 1986) citing *Rodgers v. Lincoln Towing Serv., Inc.*, 596 F.Supp. 13.27 (N.D. Ill. 1984) aff'd. 771 F.2d 194 (7th Cir. 1985). The state law causes of action that are explicitly plead are Strict Liability, Negligence, Breach of Warranties pursuant to Texas Business and Commerce Code § 2.314, Gross Negligence and Malice, Civil Conspiracy and Alter Ego/Single Business Enterprice (sic). Defendants believe that if this Court looks past the words of Plaintiffs' Original Petition, the Court will find that the substance of Plaintiffs' petition are claims axiomatically requiring the ongoing administration of **Nevgulmarco Company, Inc.'s and Carmelita, Inc.'s** ERISA Plan. Defendants' belief concerning Plaintiffs' petition is based on the fact that Plaintiff's state law claims are requesting relief that can only be provided by the benefits, rights to future benefits and the determination of availability benefits to claimants from Defendants **Nevgulmarco Company, Inc.'s and Carmelita, Inc.'s** administration of their ERISA Plan.

11.     The Supreme Court has held that for the purposes of ERISA's preemption provision "[C]ongress intended preemption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations." *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 11, 107, S.Ct. 2211, 2217, 96 L.Ed. 2d 1 (1987). "This concern only arises, however, with respect to benefits whose provisions by nature require an ***ongoing administrative program*** to meet the employer obligation." *Id.* (Emphasis added). "It is for this reason that Congress

preempted state laws relating to *plans* rather than simply to *benefits*."  *Id.* (Emphasis in original).  Furthermore, the Supreme Court in *Ingersoll-Rand Company v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990) held that "[T]hus, even though a state law required payment of . . . benefits, which would normally fall within the purview of ERISA, it was not preempted because the statute did not require the establishment or maintenance of an ongoing plan." citing *Coyne*, 482 U.S. at 12.

12.    "The Supreme Court suggested several factors which would indicate an employer's ongoing administration and, thus, the existence of an ERISA Plan: 'determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements.'" *Hartman v. Texaco*, 119 F.Supp.2d 668, 673-74, (S.D. Tex. 2000), quoting *Coyne*, 482 U.S. at 9.  Applying these criteria to the substance of Plaintiffs' state law claims, it is obvious that Plaintiffs' claims will require Defendants **Nevgulmarco Company, Inc. and Carmelita, Inc.** to perform an ongoing administration.

Harley Londrie, as the Plan Administrator for Defendants **Nevgulmarco Company, Inc.'s and Carmelita, Inc.'s** ERISA Plan, will have the fiduciary duties of determining who, if any, of the Plaintiffs are eligible for benefits under Defendants' ERISA Plan; calculating benefits for Plaintiff(s) that are eligible including what are the benefit levels for eligible Plaintiff(s); disbursing benefits to eligible Plaintiff(s) under the

Plan; monitoring and calculating the availability of the Plan's funds for benefit payments; and keeping all necessary records in order to comply with ERISA's reporting requirements.  (See attached as "Exhibit B" Affidavit of ERISA Plan Administrator, Harley Londrie).  Thus, since every factor the Supreme Court set out in *Coyne* will be satisfied once this Court determines, as Defendants urge it to, Plaintiffs are making claims for ERISA benefits, Defendants **Nevgulmarco Company, Inc. and Carmelita, Inc.** will then be performing an ongoing administration of Plaintiffs' claims.  Consequently, said state law claims must be preempted as this is clearly the scenario Congress intended to afford employers the advantages of a uniform set of administrative procedures that are governed by a single set of regulations.  As such, Plaintiffs' Motion to Remand must be dismissed.

### C.    ERISA Preempts Plaintiffs' State Law Claims That "Relate To" Defendants' ERISA Plan.

**13.**    ERISA preempts all state law claims, regardless of how they are plead, if they "relate to" an employee benefit plan. *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001). ERISA's sweeping preemption language provides that it "supercede[s] any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  In particular, the Fifth Circuit has held "[W]e do not ask whether the state law conflicts with or frustrates a congressional purpose, but whether the state law duplicates or falls within the scope of an ERISA § 502(a) remedy." *Roark v. Humana*, 307 F.3d 298, 305 (5th Cir. 2002) quoting *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 64, 107 S.Ct. 1542, 95 L.Ed. 2d 55 (1987).

"If Calad and Davila could have brought their claims under ERISA § 502(a), the claims would be completed preempted, and the district court would have been correct to exercise jurisdiction." *Roark*, 307 F.3d at 305. Furthermore, as the Court in *Roark* succinctly stated "[S]ection 502(a) complete preemption is a slight misnomer, for it does not involve traditional preemption analysis." *Id.* citing *McClelland v. Gronwald*, 155 F.3d 507, 516 (5th Cir. 1998) ("Complete preemption is less a principal of substantive preemption than it is a rule of federal jurisdiction"). No matter how Plaintiffs couched their claims in their petition prior to their knowledge that Defendants **Nevgulmarco Company, Inc. and Carmelita, Inc.** had an ERISA Plan, it is unequivocally clear these are claims for benefits that "relate to" Defendants' ERISA Plan and should have been brought under  § 502(a) of ERISA; thus, Plaintiffs' claims **are** completed preempted.

14.    Further, the United States Supreme Court and the Fifth Circuit have recognized ERISA preemption is "clearly expansive," "broadly worded," "deliberately expansive," and "conspicuous for its breath." *Heimann v. Nat'l. Elevator Indus. Pension Fund*, 187 F.3d 493, 511 (5th Cir. 1999); See, also *Pilot Life Ins.*, 481 U.S. at 46; *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1294 (5th Cir. 1989). ("Because of the breadth of the preemption clause and the broad remedial purpose of ERISA, 'state laws found to be beyond the scope of § 1144(a) are few.'"). State Laws "relate to" an employee benefit plan if they have "a connection with or reference to such a plan." *Egelhoff*, 532 U.S. at 147 (quoting *Shaw v. Delta Airlines,*

*Inc.*, 463 U.S. 85, 103 S.Ct. 2890 (1983)).  Additionally, in determining whether a claim "arises under" federal law, almost all District Courts examine the Plaintiffs' claim utilizing the "well plead" complaint rule; however, "[T]here is an exception to the well-plead complaint rule, though, if Congress so preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Arana v. Ochsmer Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003) quoting *Taylor*, 481 U.S. at 63-64.  In particular, "[I]n *Metropolitan Life Insurance Co. v. Taylor* the Supreme Court found that state law claims seeking relief within the scope of ERISA § 502(a)(1)(B) are completely preempted." *Id.* citing *Taylor*, 481 U.S. at 62-66.

15.    A simple review of Plaintiffs' claims will clearly illustrate that Plaintiffs' state law causes of action as they pertain to **Nevgulmarco Company, Inc. and Carmelita, Inc.** clearly duplicate and/or fall within the scope ERISA's § 502(a) remedies as these are the __only__ benefits Plaintiffs can receive from the above referenced Defendants. (See Plaintiffs' Original Petition).  (See also "Exhibit A" to Plaintiff's (sic) Brief in Support of Jurisdiction).  In ¶ 8.1 of Plaintiffs' Original Petition, they allege **Nevgulmarco Company, Inc. and Carmelita, Inc.** have "created an extreme risk of harm upon corporation's (sic) employees, and, said corporation (sic) has (sic) not reasonably calculated to respond to claims in light of the nature and risk and (sic) of the business." Further, in ¶ ¶ IX, X and XI of Plaintiffs' Original Petition, Plaintiffs have alleged Defendants have breached certain warranties even though **Nevgulmarco Company, Inc. and Carmelita, Inc.** do not manufacture nor distribute nor retail the

product that Plaintiffs allege injured Plaintiff **Angel Romero, Jr.** In particular, in ¶ 12.3 of Plaintiffs' Original Petition Plaintiffs allege they have given notice to Defendants of Plaintiff **Angel Romero, Jr.'s** injuries, as such, whether explicitly or implicitly Plaintiffs have requested benefits form Defendants **Nevgulmarco Company, Inc.'s and Carmelita, Inc.'s** ERISA Plan and said claims "relate to" an ERISA Plan; and due to Congress' enactment of ERISA preemption statute being so broad and comprehensive, these claims of Plaintiffs are preempted and this Court must deny Plaintiff's Motion to Remand.

      **16.**    Additionally, in determining whether state law claims are ERISA preempted, the Fifth Circuit analyzes two factors: (1) whether the claim addresses areas of exclusive federal concern, such as the right to receive benefits under an ERISA Plan and (2) whether the claim affects the relationship among traditional ERISA entities, the employer, the Plan and its fiduciaries, and the participants and beneficiaries. *Hollis v. Provident Life & Acc. Ins. Co.*, 259 F.3d 410, 414 (5th Cir. 2001). Under this analysis, Plaintiffs' state law claims fall within ERISA's preemptive scope.

      **(a).**   **Plaintiffs' Claims Address An Area Of Exclusive Federal Concern Under ERISA.**

      **17.**    Plaintiffs' Strict Liability, Negligence, Fraud, Breach of Warranties pursuant to Texas Business and Commerce Code § 2.314, Gross Negligence and Malice Civil Conspiracy and Alter Ego/Single Business Enterprice (sic) claims address an area of exclusive federal concern because (1) as previously stated, Plaintiffs assert

DEFENDANTS NEVGULMARCO COMPANY, INC.'S AND CARMELITA, INC.'S
SUPPLEMENTAL BRIEF IN SUPPORT OF JURISDICTION                             Page 14 of 24
TF/bgw  #031087  L:\WARNKE\CLIENT\ZIMCO\Carmelita Inc\Romero\Romero v. Nev\USDC-B-03-153\SuppBrief-Jurisdiction\SuppBrief-Jurisdiction.wpd

state common law and statutory causes of action that require Defendants to maintain an ongoing administrative program regarding their ERISA Plan "administration" of Plan benefits, namely, the eventual determination of payments of Plaintiffs' implied benefits claim and (2) Plaintiffs seek additional benefits outside the Plan of actual and punitive damages and statutory penalties.

### (b). Plaintiffs' Lawsuit Concerns The Administration Of Payments And/Or Denials Of Plan Benefits.

18.    According to Plaintiffs, this lawsuit stems from an alleged injury that occurred on the M/V Carmelita which implicitly concerns the administration of Plan benefits. (See Plaintiffs' Original Complaint (herein "Pet.")). Plaintiffs hinge all of their claims on General Maritime Law, the Jones Act and State Law causes of action for both common law and statutory causes of action. (Pet. ¶ ¶ IV, V, VI, VII, VIII, IX, X, XI, XII, XIII and XIV).

19.    In Plaintiffs' own words, their claims seek benefits for injuries Plaintiff **Angel Romero, Jr.** incurred during the scope of his employment. (Pet. ¶ ¶ VIII, X, XI, XII, XIII, XIV and XV). Therefore, ERISA preempts their state law claims because as the *Corcoran* court succinctly stated:   "[B]ut it is equally true that Congress may preempt state law causes of action which seek to enforce various duties when it determines that such actions would interfere with a ***carefully constructed scheme of federal regulation***. *Corcoran v. United Health Care, Inc.*, 965 F.2d 1321, 1333 (5th Cir. 1992). (Emphasis added); citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). See also *Salameh v. Provident Life*

& *Acc. Ins. Co.*, 23 F.Supp.2d 704, 718 (S.D. Tex. 1998). ("Preemption applies when the essence of a claim seeks the recovery of benefits or otherwise relates to an employee benefit plan, even when brought against a third-party, non-fiduciary."). The *Corcoran* court acknowledged in its holding that under ERISA's civil enforcement scheme there may be an ***absence of a remedy for a plaintiff's claim*** in connection with a plan benefit determination. *Corcoran*, 965 F.2d at 1333. (Emphasis added). Furthermore, *Corcoran* held that while they were "not unmindful" that their interpretation "leaves a gap in remedies within a statute intended to protect participants in employee benefit plans, . . . , the lack of an ERISA remedy ***does not affect a preemption analysis***." *Id.* (Internal citations omitted). (Emphasis added). Consequently, due to the fact that Plaintiffs' claims are preempted by Defendants **Nevgulmarco Company, Inc.'s and Carmelita, Inc.'s** ERISA Plan, Plaintiffs' Motion to Remand must be dismissed.

### (c).    Plaintiffs Seek Additional Benefits Under The Plan.

20.    Plaintiffs also seek additional benefits the Plan does not offer. (Pet. ¶ ¶ XIII, XV and XVI). For example, Plaintiffs assert that they are entitled to exemplary damages and consequential damages, including "mental anguish." (Pet. ¶ ¶ VIII, X, XI, XII, XIII, XIV and XV). These allegations further support Defendants' preemption analysis. Because the Court must refer to the terms of the Plan to examine Plaintiffs' eligibility for these additional benefits, ERISA preempts their claims. <u>See, e.g.</u>, *Hubbard v. Blue Cross & Blue Shield*, 42 F.3d 943, 946

---

(5th Cir. 1995). ("ERISA preempts state law claims of fraud, breach of contract or negligent misrepresentation that have the effect of orally modifying the express terms of an ERISA Plan and increasing Plan benefits for participants or beneficiaries who claim to have been misled"). Thus, the Plaintiffs' petition contains state law claims concerning Plaintiffs' rights to receive additional benefits not available under Defendants' ERISA Plan and, as such, directly "relate to" an ongoing administration program involving traditional ERISA entities, the participant, his beneficiaries and the Plan Fiduciary, Harley Londrie, and their additional right to receive additional benefits, which is an area of exclusive federal concern. *Id.* See also *Hollis*, 259 F.3d at 414. "Therefore, ERISA preempts 'Plaintiffs'' state law claims against" **Nevgulmarco Company, Inc. and Carmelita, Inc.** *Id.*

### (d).   The State Law Claims Affect The Relationship Between Traditional ERISA Entities.

**21.**    The petition claims also satisfy the second ERISA preemption factor that Plaintiffs **Angel Romero, Jr. and those claiming benefits by virtue of a relationship with him** are traditional ERISA entities. An ERISA Plan participant or beneficiary is a person designated by an employee benefit plan participant, or by an employee benefit plan itself, to become entitled to benefits under the Plan. 29 U.S.C. § § 1002(7)&(8). Plaintiff **Angel Romero, Jr.** is a covered employee under the Plan. Accordingly, Plaintiffs **Angel Romero, Jr. and those claiming benefits by virtue of a relationship with him** are Plan participant(s) or beneficiaries under ERISA. See 29 U.S.C. § § 1002(7)&(8); *Hollis*, 259 F.3d at 416 (concluding that Plan designated plaintiff as

**(e).   Preemption Supported By The Recent Holding In
Burgos v. Group & Pension Administrators, Inc.**

24.   On August 13, 2003, Southern District of Texas, Houston Division,
District Judge Rosenthal held ERISA completely preempted participants state common
law contractual and extra-contractual claims, and participants' statutory bad faith
claims were not saved from ERISA preemption.   *Burgos v. Group & Pension
Administrators, Inc.*, 286 F.Supp. 2d 812, 817-819 (S.D. Tex. 2003).
The *Burgos* holding is of the utmost relevance as it discusses and applies the three
cases, *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d
55 (1987); *Roark v. Humana*, 307 F.3d 298 (5th Cir. 2002); and *Arana v. Ochsmer
Health Plan*, 338 F.3d 433 (5th Cir. 2003), this Court requested the parties involved
in this case to examine.

25.   The *Burgos* Court cited numerous cases to back its holding, including
*Jones v. Tx. Health Choice*, No. 4:02-CV-388, W.L. 302217, at 5-6 (E.D. Tex.
2003)(holding that ERISA preempts state negligence claims because it "involves the
handling of a benefit determination") and *Salameh v. Provident Life & Accident Ins.
Co.*, 23 F.Supp.2d 704, 718 (S.D. Tex. 1998) ("*Because the essence of [the] suit
seeks the recovery of benefits or* otherwise relates to an employee benefit plan, [t]he
state law claims . . . are preempted by ERISA.").   (Emphasis added).
*Burgos*, 286 F.Supp.2d at 817-819.   Defendants **Nevgulmarco Company, Inc. and
Carmelita, Inc.** would respectfully request this Court to examine the *Burgos* case as

similarities between the instant case the the *Burgos* case must lead this Court to conclude Plaintiffs' state law claim must be preempted by ERISA. *Id.* at 812-19.

### D.    Defendants Nevgulmarco Company, Inc.'s And Carmelita, Inc.'s Response To Plaintiffs' Motion To Remand.

**26.** Although Defendants have already addressed Plaintiffs' misstatement of the law in its Response to Plaintiffs' Motion to Remand and would urge this Court to review said response again, Defendants have now found case law directly on point concerning the removal of maritime claims including Jones Act cases. *Iwag v Geisel Compania Maratima, S.A.*, 882 F.Supp. 597, 604-05 (S.D. Tex. 1995) ("[J]oinder of a non-removable claim such as a Jones Act claim, with another separate and independent claim removable on the basis of federal question jurisdiction subjects both causes of action to removal") quoting Harold K. Watson, *Modern Practice Considerations in Maritime Personal Injury Litigation: Procedural Weapons for Venue Battles*, 68 Tulane L.Rev. 473, 497 (1994).  In Defendants' Response to Plaintiffs' Motion to Remand filed November 10, 2003, Defendants were not aware of any case law on removal of maritime cases but have since researched and found maritime and Jones Act cases are subject to removal pursuant to Federal Question Jurisdiction and not only to Diversity Jurisdiction.   In *Tennessee Gas Pipe v. Houston Casualty Insurance Co.*, 87 F.3d 150, 153 (5th Cir. 1996), the Court held that:

> "The 'saving to suitors' clause does no more than preserve the right of maritime suitors to pursue nonmaritime *remedies*. It does not guarantee them a nonfederal *forum* or limit the rights of defendants to remove such actions to federal court where there exists some basis for federal jurisdiction other than admiralty." *Id.* (Emphasis in original).

citing *Poirrier v. Nicklos Drilling Co.*, 648 F.2d 1063, 1066 (5th Cir. 1981).

See also *Walsh v. Seagull Energy Corporation*, 836 F.Supp. 411, 414 (S.D. Tex.

1993). See also *Iwag, 882 F.Supp. at 604-05.*

27.    In the *Walsh* opinion, Judge Kent went on to discuss the "saving to

suitors" clause's applicability to maritime claims.

> "Other than for its grant of concurrent jurisdiction to the state
> courts, the savings clause is irrelevant to the removal question.  The
> question for this Court is solely whether Walsh's petition states a
> removable federal question, or whether remand is proper because this
> case is based on a petition which only asserts a maritime claim against
> an in-state defendant."    *Walsh*, 836 F.Supp. at 414; See also
> *Uncle Ben's v. Hapag - Lloyd Aktiengesellscraft*, 855 F.2d 215, 217
> (5th Cir. 1988).  (Maritime claim removable where remedy is governed
> by the Federal Harter Act).

Applying the above case law to our fact, if this Court determines, as Defendants feel

it must, Plaintiffs' claims are preempted by ERISA, a Federal Question, the removal of

the maritime claims including the Jones Act case is proper.  As such, this Court must

deny Plaintiffs' Motion to Remand.

28.    Additionally, Defendants **Nevgulmarco Company, Inc. and Carmelita, Inc.**

would point out to the Court that even though Plaintiffs conclusorily state they have

not alleged any state law claims, Defendants would request this Court to review

Plaintiffs' Original Petition.  It clearly sets forth at least five state law causes of action.

In fact, one of Plaintiffs' claims, implied breach of warranty, is statutorily codified in

Texas Business and Commerce Code § 2.314.  Plaintiffs attempts to misguide this

---

Court are a demonstration of the great lengths Plaintiffs will go to avoid Federal Court Jurisdiction.

## CONCLUSION

29.    ERISA completely preempts Plaintiffs' state law claims.  The Plan is an uncontroverted "employee welfare benefit plan" under ERISA.  Plaintiffs' claims address an area of exclusive federal concern under ERISA because (1) the claims asserted are State Common Law and statutory causes of action that require Defendants to maintain an ongoing administrative program regarding their ERISA Plan and (2) the claims seek to increase Plaintiffs' Plan benefits.  Finally, their state law claims involve traditional ERISA entities.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, **Nevgulmarco Company, Inc. and Carmelita, Inc.** respectfully request that the Court deny Plaintiffs' motion to remand, maintain jurisdiction in this Federal Court and award Defendants all other relief to which they are entitled.

DATED the _7ª_ day of January, 2004.

Respectfully submitted,

**FLEMING & HERNANDEZ, P.C.**
1650 Paredes Line Road, Suite 102
Brownsville, Texas  78521-1602
Telephone:  (956) 982-4404
Telecopier:  (956) 982-0943

by: _Tom Fleming_

**Tom Fleming**
State Bar of Texas No. 07133000
Federal I.D. No. 1188

**Jeffrey G. Mathews**
State Bar of Texas No. 24013115
Federal I.D. No. 24499

**ATTORNEYS FOR DEFENDANTS,
NEVGULMARCO COMPANY, INC.
and CARMELITA, INC.**

## CERTIFICATE OF SERVICE

I certify that true and correct copies of the foregoing DEFENDANTS NEVGULMARCO COMPANY, INC.'S AND CARMELITA, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF JURISDICTION were served on January 7th, 2004 in the manner(s) indicated below upon the following Counsel:

CO-COUNSEL FOR PLAINTIFFS:
Mikal C. Watts; Ray R. Marchan
WATTS LAW FIRM, L.L.P.
1926 East Elizabeth Street
Brownsville, Texas 78520
(CERTIFIED UNITED STATES MAIL, R.R.R., #7002 2030 0007 1000 1337)

CO-COUNSEL FOR PLAINTIFFS:
Ernesto Gamez, Jr.
LAW OFFICES OF ERNESTO GAMEZ, JR.
Justice For All Building
777 East Harrison Street
Brownsville, Texas 78520
(CERTIFIED UNITED STATES MAIL, R.R.R., #7002 2030 0007 1000 1344)

CO-COUNSEL FOR DEFENDANT, UNIVAR USA, INC.:
Stan Perry
HAYNES AND BOONE, LLP
1000 Louisiana, Suite 4300
Houston, Texas 77002-5012
(CERTIFIED UNITED STATES MAIL, R.R.R., #7002 2030 0007 1000 1368)

CO-COUNSEL FOR DEFENDANT, UNIVAR USA, INC.:
Michael Rodriguez
MICHAEL RODRIGUEZ, P.L.L.C.
1000 East Madison
Brownsville, Texas 78520
(CERTIFIED UNITED STATES MAIL, R.R.R., #7002 2030 0007 1000 1382)

COUNSEL FOR DEFENDANT, ZIMCO MARINE, INC.:
Jaime A. Saenz; RosaMaria Villagomez-Vela
RODRIGUEZ, COLVIN, CHANEY & SAENZ, L.L.P.
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
(CERTIFIED UNITED STATES MAIL, R.R.R., #7002 2030 0007 1000 1375)

Tom Fleming

1           IN THE UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF TEXAS
2                 BROWNSVILLE DIVISION

3    ─────────────────────────────
                                    )
NEVGULMARCO COMPANY, INC., ET AL    )
4                                   )
                                    )  CIVIL ACTION NO.
5    VS.                            )  B-03-153
                                    )
6    ANGEL ROMERO, JR.              )
                                    )
7    ─────────────────────────────

8

                 PLAINTIFFS' MOTION TO STAY
9         BEFORE THE HONORABLE ANDREW S. HANEN
                   SEPTEMBER 23, 2003
10

     APPEARANCES:
11
     For the Plaintiff:        MR. TOM FLEMING
12                             Fleming & Hernandez
                               1650 Paredes Line Road
13                             Brownsville, Texas

14

15   For the Defendant:        MR. RAY MARCHAN
                               Watts Law Firm
16                             1926 East Elizabeth
                               Brownsville, Texas
17

18   Transcribed by:          BARBARA BARNARD
                               Official Court Reporter
19                             600 E. Harrison, Box 301
                               Brownsville, Texas   78520
20                             (956)548-2591

21

22

23                    CERTIFIED

24                       COPY

25

EXHIBIT NO. A

```
 1              T... COURT:  Be seated, please.

 2        Let me call B-03-153, Nevgulmarco -- Nevgulmarco, is that

 3   how you pronounce that?

 4              MR. FLEMING:  Nevgulmarco.

 5              THE COURT:  -- Company versus Angel Romero, Jr.

 6              MR. FLEMING:  Your Honor, the plaintiff is present and

 7   ready.

 8              THE COURT:  All right.  Are you Mr. Fleming?

 9              MR. FLEMING:  Yes, sir, I am.

10              MR. MARCHAN:  Good afternoon.  Ray Marchan for the

11   defendant, Angel Romero.

12              THE COURT:  Mr. Fleming, let me start with you first of

13   all.  And, I mean, one of the initial concerns a federal judge

14   always has is do I have jurisdiction.

15              MR. FLEMING:  Yes, sir.

16              THE COURT:  Do I have jurisdiction?

17              MR. FLEMING:  I believe so, Your Honor.

18              THE COURT:  Why?

19              MR. FLEMING:  Because this is a Jones Act case.  A Jones

20   Act case, it's a federal regulation, as the Court well knows,

21   and the legislation itself says that jurisdiction in such

22   actions shall be in the Court of the district of which the

23   defendant employer resides or in which his principal office is

24   located.

25              THE COURT:  Okay.
```

1   MR. FLEMING:  The current employer is Carmelita, and the

2   main office of that corporation is in Port Isabel.

3   THE COURT:  Okay.

4   MR. FLEMING:  So we believe that the Court has

5   jurisdiction on that basis alone.  And also the arbitration

6   agreement that was signed by Angel Romero and the Carmelita and

7   the parent corporation was -- invokes the Federal Arbitration

8   Act.  While that doesn't give jurisdiction, it's another basis

9   for jurisdiction.

10   THE COURT:  I'm not sure that does give you

11   jurisdiction.

12   MR. FLEMING:  Well, I'm not going to argue that point.

13   I tend to agree with the Court.  But I think the Jones Act

14   clearly gives jurisdiction.

15   THE COURT:  Does it matter the fact that you're not a

16   defendant employer but a plaintiff employer?

17   MR. FLEMING:  We are the plaintiff employer for the sole

18   purpose of enacting the arbitration agreement.  I agree the

19   stated contract is governed by state law.  But it concerns in

20   this case, by all pleadings before the Court filed by both

21   plaintiff and the defendant in this case, in its motion

22   concerning jurisdiction that this is a personal injury case

23   under the Jones Act because the gentleman was, if he was injured

24   at all, was injured while on board the ship, the ship owned by

25   Carmelita.  That's clearly covered by the Jones Act.

1    THE COURT:  All right.  Mr. Marchan, why don't I have

2    jurisdiction under the Jones Act?

3    MR. MARCHAN:  Your Honor, I'd refer the Court to

4    Title 9, Chapter 1, Section 1 that defines maritime transactions

5    and commerce, and it specifically states there that nothing in

6    that definition shall apply to contracts of employment of

7    seamen.  And so even though this Jones Act is a maritime

8    doctrine that has a federal basis, the federal law itself

9    recognizes that when it comes to maritime jurisdiction, it will

10   not exercise that jurisdiction if there is a contract related to

11   the seaman's employment.  And that's why we believe, again, that

12   because they invoked this action claiming that this is about an

13   employment contract, that, in fact, employment contracts of

14   seaman are not governed by federal jurisdiction and that they

15   remain as contract action between the parties in the respective

16   state in which they were injured.

17   THE COURT:  Well, doesn't that really just pertain to

18   suits for breach of the employment agreement?  And, I mean, what

19   the heart of this matter is is that this individual has been

20   seriously injured by some accident offshore?

21   MR. MARCHAN:  Yes, Your Honor.  He was seriously injured

22   and entitled to certain benefits as a seaman, maintenance and

23   cure.  Upon what I believe was his best interest, we asked for

24   the employer to provide the name of the insurance company so

25   that preauthorization could be obtained to move him from the

1    hospital to a nursing home.

2          THE COURT:  Uh-huh.

3          MR. MARCHAN:  They've refused to give that information.

4    And so what we did is we noticed, after we had his wife

5    appointed guardian, the deposition of the person who would know

6    that, Mr. Laundry.  They filed a motion to quash that

7    deposition.  And then we requested a hearing, which was set for

8    Monday, which has now been reset to this Friday, so the state

9    county court has not even ruled on their objection to us

10   deposing Mr. Laundry.

11         THE COURT:  Well, the -- the deposition notice was filed

12   in the guardianship case?

13         MR. MARCHAN:  Yes, sir, because his wife, who has the

14   duty to act in his best interests, wants to make sure that she

15   can get him transferred to a facility that will accept the

16   coverage.  They will not allow him to be transferred there until

17   they get information about insurance so they can get

18   preauthorization; because if you don't get preauthorization, you

19   may not be covered.

20         THE COURT:  Right.

21         MR. FLEMING:  So what --

22         THE COURT:  What is his current condition?

23         MR. MARCHAN:  He is in a coma state.  There has been

24   some slight improvement with ongoing therapies.  We're hoping

25   that upon his transfer that he'll be evaluated by several types

1    of therapists to see whether there can be a hope for any more

2    improvement.  He's 35 years old.

3            THE COURT:  Talk to me about the insurance issue.

4            MR. FLEMING:  Your Honor, the only insurance -- there is

5    no personal injury insurance on this ship.  The only insurance

6    that exists would be a health insurance policy which does not

7    cover rest homes.  We have asked Mr. Marchan over and over and

8    over for copies of the medical bills so we can begin to pay

9    cure.  Cure is an obligation of the boat owner.  It doesn't

10   matter whether it comes from insurance or the pocket of the boat

11   owner.  We've asked for those so we can begin to pay.

12           THE COURT:  Stop.  Is there any reason the Carmelita

13   couldn't give Mr. Marchan a copy of the health insurance?

14           MR. FLEMING:  It doesn't do him any good because the

15   Carmelita is the one that has to file the claim.

16           THE COURT:  Why, why, why, why?

17           MR. FLEMING:  Because that's what the policy reads.

18   This is a very --

19           THE COURT:  Well, okay.  And you might know that, but he

20   doesn't know that because you won't give him the policy.

21           MR. FLEMING:  I told him that.  My problem, Your Honor,

22   is that we -- this policy is one of those policies that has just

23   come on the market not that long ago.  It covers all of the

24   employees of various and sundry boats which are within the

25   parent corporation umbrella of Nevgulmarco.  It covers all the

1    employees of those boats.  It has a very definite limit on it

2    period.  It's not a per incident limit.  It's a very definite

3    limit.

4        The employer is the one who is supposed to file the claim,

5    not the employee.  It doesn't cover -- it doesn't cover

6    maintenance.  It covers only cure.  We've attempted to pay cure.

7    We, in fact, yesterday sent out a maintenance check.

8            THE COURT:  Tell me what the definition of cure is.

9            MR. FLEMING:  Cure is to pay for medical treatment until

10   the maximum medical benefit is achieved.  That's the case law

11   over and over and over again in the 5th Circuit.

12           THE COURT:  Okay.  And so --

13           MR. FLEMING:  Maintenance is to pay for room and board

14   at the same rate that he would have received had he stayed on

15   the ship.  And the last time that was set in the Southern

16   District of Texas, Brownsville Division, was $15 a day.  That

17   has been paid by check mailed to Mr. Marchan yesterday up

18   through yesterday.

19           THE COURT:  Well, here's what -- just as an initial

20   thing, I want you to provide a copy of the insurance policy to

21   Mr. Marchan.

22           MR. FLEMING:  Fine, Your Honor.

23           THE COURT:  Because, I mean, you may be 100 percent

24   right.  He's got to represent his client.  How does his client

25   know you're 100 percent right unless Mr. Marchan can read the

1    insuranc policy?  So just as a -- just as a benefit to that.

2         Now, let me ask you a couple questions about cure and

3    maintenance.

4              MR. FLEMING:  Your Honor, if I might interrupt the Court

5    for a moment.  If we provide Mr. Marchan a copy of the insurance

6    policy, it is still the employer's obligation to make the claim.

7    We have nothing with which to make a claim.

8              THE COURT:  Well, I know.  I understand that.

9              MR. FLEMING:  All right.

10             THE COURT:  I'm not arguing with you on that.  I'm

11   just -- you know, that's one more issue regarding the insurance

12   policy that if he reads it, he'll realize that he can't make the

13   claim.  He's got to go through you to make it.  But at least he

14   will know and will have fulfilled his duty to his client to

15   follow-up on the insurance.

16             MR. FLEMING:  I apologize for interrupting.

17             THE COURT:  Okay.  Now, assume with me that -- is this

18   going to be one of those situations where, let's say, he's gone

19   through the acute phase in the hospital.  They seem to have done

20   for him everything that they could have done or could do or at

21   least that the doctors are saying, "We've done all we can, but

22   he's still in this coma."  When they reach that stage, does it

23   cease being cure and start becoming maintenance?

24             MR. FLEMING:  Well, maintenance is always obligated from

25   the day he leaves the ship.

1    THE COURT:  No.  But, I mean, from your reading of that

2    insurance policy, does it cease being covered by the cure part

3    of it and starts following under -- I'm trying to figure out

4    what the policy covers separate and apart from what the ship

5    owner's obligation is, is where I'm eventually going.

6          MR. FLEMING:  As I read the policy, Your Honor, subject

7    to being corrected on this, but as I read the policy just today

8    at noon again, it appears to me that it covers the same period

9    of time as the legal obligation of cure covers.  When maximum

10   medical benefit is reached and there are no further medically

11   supported -- medically necessary, I believe is the language it

12   uses, benefits, then that part of the policy ceases.  We don't

13   believe that it pays maintenance.  I stand to be corrected on

14   that as well, but that's my reading of the policy.

15         THE COURT:  All right.  Well, if you will provide

16   Mr. Marchan a copy of that so he can do it -- so he can review

17   it.  And, Mr. Marchan, if you disagree with Mr. Fleming's

18   interpretation of it, I want you two to get together.  And if

19   you need court intervention, I will be available, and let's see

20   what we can about -- see what we can do about providing the

21   maximum benefit for the injured person here with regard to the

22   insurance.

23       Now, having said that, let me drop back to the lawsuit.

24         MR. MARCHAN:  Yes, sir.

25         MR. FLEMING:  I'll be happy to give him a copy of the

policy, .our Honor.

THE COURT:  What I'm trying to do is let's take care of what's acute while it's acute.

MR. FLEMING:  If we can have -- in exchange, if we could have copies of the medical bills that have been incurred, we car started getting --

THE COURT:  All right.  Mr. Marchan, when you get those, as soon as you can get them, let's get Mr. Fleming a copy of them.

MR. MARCHAN:  Yes, sir, Your Honor.  I had a meeting about eight days ago with the administrator of the hospital and have forwarded to him by fax my correspondence to Mr. Fleming and Mr. Fleming's response so that they could -- even though the patient is still there and they haven't closed their medical chart, that they can send interim information directly over to Mr. Fleming.

THE COURT:  Okay.  All right.  Is there a personal injury lawsuit pending?

MR. FLEMING:  I've been told by the pleadings that were filed today or given to us this morning by Mr. Marchan that he filed a lawsuit against my clients as well as one other, who I do not know who it is, on August the 29th at 4:30 p.m., which was an hour after we filed this lawsuit.  I do not have a copy of that.  My client has never been served.  So far as I know, none of the defendants has been served in that state court

1    action.

2            THE COURT:  All right.  Has Mr. Romero or his guardian

3    been served in this action?

4            MR. FLEMING:  The guardian was served on 9/15.

5            THE COURT:  Now, is what he just said right about the

6    personal injury?

7            MR. MARCHAN:  He's correct.

8            THE COURT:  All right.  Well, here's what I want to do

9    with regard to this action.  First of all, if he gives you the

10   insurance policy, you don't need the deposition, correct?

11           MR. MARCHAN:  I wouldn't have any basis for doing so

12   under the guardianship action.  I would have to wait until the

13   personal injury action proceeded.

14           THE COURT:  Right.

15           MR. MARCHAN:  My intent was, A, the ward, and that's to

16   try to get him benefits to get over to a nursing home.

17           THE COURT:  Okay.

18           MR. MARCHAN:  But they have not completed his treatment.

19   There's been improvement since his hospitalization; and until

20   he's evaluated fully by all the therapists will they know if

21   he's reached maximum medical cure.

22           THE COURT:  The three of us can't decide that.  I mean,

23   that's going to be some guy with a lot more initials after his

24   name than any of us have who will decide whether he's reached

25   his maximum potential.  But -- so with the understanding that

you're going to be provided with the insurance policy, you'll cancel this deposition?

MR. MARCHAN: Absolutely. In fact, there's a hearing set for this Friday in the county court at law; and if I receive it before that time, I'll pass the hearing.

THE COURT: All right. Let's do both of those. You're going to provide him this --

MR. FLEMING: I'll fax them to Mr. Marchan this afternoon.

THE COURT: Then what I'd like, Mr. Fleming, you to do, is Mr. Marchan filed today or late yesterday the motion to dismiss for lack of jurisdiction. I'd like you to respond to that.

MR. FLEMING: Yes, sir.

THE COURT: And I'm going to give you -- today is the 22nd -- 23rd, I mean, I'm sorry. I'm going to give you until the 3rd of October -- that's a Friday -- to respond to that. Mr. Marchan, you have until the 10th if you wish to file a reply to whatever he files --

MR. MARCHAN: Yes, Your Honor.

THE COURT: -- in regard to that. And I want you -- I want to address whether or not I have jurisdiction; and secondly, whether or not I should exercise jurisdiction.

MR. FLEMING: Yes, sir.

THE COURT: Which Mr. Marchan didn't necessarily bring

1  up, but I think it's implicit with the fact that there may be a

2  sister suit in the state court.

3       MR. FLEMING:  Your Honor, while we're discussing it --

4  apologize for interrupting the Court again.  While we're talking

5  about exchanging things, could we have the benefit of the copy

6  of the lawsuit that was filed in state court?

7       THE COURT:  I'm sure he'll be glad to fax you one.

8       MR. MARCHAN:  I'll be glad to.

9       THE COURT:  All right.

10      MR. MARCHAN:  The other defendant mentioned is Uniwire

11  Corporation, which we understand to be the distributor of the

12  chemical that was used.

13      THE COURT:  Okay.  The actual agent that we think is at

14  fault or you think is at fault?

15      MR. MARCHAN:  That delivered the product, yes.

16      THE COURT:  Okay.  All right.  I'm going to deny your

17  motion to stay based on the fact that he's withdrawing the

18  deposition.

19      MR. FLEMING:  I understand.

20      THE COURT:  And I'm going to hold your motion to stay

21  and motion on the jurisdiction pending these briefs.

22      MR. MARCHAN:  Of course.

23      THE COURT:  And then what I want to do is if it looks

24  like the Court has jurisdiction, then I'm going to move forward,

25  and we're going to talk about -- then I'll issue a ruling to

that effect.  And in that ruling, I'll have time frames under which I want you to talk to me about the arbitration clause, because I assume you're immediately going to want, if there's a conflict, to have it sent to arbitration.

MR. FLEMING:  That's correct.

THE COURT:  All right.  And if I -- if I find there's no jurisdiction, then that will be somebody across the street's problem, and you can argue with that person about whether this is an arbitrable event and falls under the arbitration.

MR. FLEMING:  When you said immediately sent to arbitration, I would like for it to be immediately sent to arbitration subject to doing some preliminary discovery, obviously, to determine what, if anything, has been medically determined to be the cause of the comatose condition.

THE COURT:  Well, and that -- I mean, of course, that's a chicken and egg argument.  Do you want me to control discovery, or do you want the arbitrator to control the discovery?

MR. FLEMING:  I want the arbitrator.  I was just saying we wouldn't immediately arbitrate.  I didn't want that to be misunderstood.

THE COURT:  Okay.  But I think that's what we'll do, and I'll probably put you on pretty short time frames with regard to the arbitration issue, so I'm giving you a heads up now that -- and I -- I mean, it shouldn't be a surprise, and it's research

you're going to have to do whether you do it for me or whether you do it for whomever has the case across the street.  So you might as well bone up on whether a shipboard accident under whatever the wording of this arbitration clause is, you know, gets arbitrated under the federal act.

MR. FLEMING:  We just finished a case in the 13th Court of Appeals on this very issue.

THE COURT:  So you're ready.  Maybe you guys can exchange briefs.

MR. MARCHAN:  We will have a preliminary issue, which was whether, in fact, it was knowingly entered, intelligently entered into because of a Spanish speaker situation.

THE COURT:  Sure.

MR. MARCHAN:  I think the Court has seen the volume of the documents that reflect the arbitration agreement.

THE COURT:  Yeah.  And, I mean, state court, I know it's not even arbitrable if we were under the Texas Act because it exempts out personal injuries.

So let's -- we're going to do the jurisdiction first.  You know, I either have it or I don't.  If I have it, we'll talk about the arbitration clause.

MR. MARCHAN:  Yes, Your Honor.

THE COURT:  Is there anything else we can resolve today?

MR. FLEMING:  I don't believe so, Your Honor.

MR. MARCHAN:  No, sir.

1          THE COURT:  Anything that y'all need?

2          MR. MARCHAN:  No.  That's really all that we were after,

3     is what we were going to get today.

4          THE COURT:  Okay.  All right.

5          MR. MARCHAN:  Thank you, sir.

6          MR. FLEMING:  Thank you, Your Honor.

7          THE COURT:  We'll stand adjourned.

8                              * * *

9

10        (End of requested transcript)

11                         -oOo-

12     I certify that the foregoing is a correct transcript from

13     the record of proceedings in the above matter.

14

15     Date:  December 30, 2003

16

17                              _Barbara Barnard_
                                Signature of Court Reporter
18                              Barbara Barnard

19

20

21

22

23

24

25

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **AVIGAIL MARTINEZ DE ROMERO** | § | |
| **Individually, and As Guardian of** | § | |
| **ANGEL ROMERO, JR., Mentally and** | § | |
| **Physically Incompetent; ANGEL** | § | |
| **ROMERO GONZALEZ and GLORIA** | § | |
| **BADILLO RODRIGUEZ DE ROMERO,** | § | |
| **The Natural Parents of ANGEL** | § | |
| **ROMERO, JR.; and LUCILLA** | § | |
| **DELGADO ROMERO, As Next Friend** | § | **CIVIL ACTION NO. B-03-153** |
| **of ANGEL ROMERO DELGADO and** | § | |
| **CAROLINA ROMERO DELGADO,** | § | **JURY DEMANDED** |
| **Minor Children of ANGEL ROMERO,** | § | |
| **JR.** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **UNIVAR USA, INC.;** | § | |
| **NEVGULMARCO COMPANY, INC.;** | § | |
| **ZIMCO MARINE, INC.;** | § | |
| **AND CARMELITA, INC.** | § | |
| **AS THE OWNER/OPERATOR** | § | |
| **OF THE M/V "CARMELITA"** | § | |

## AFFIDAVIT OF HARLEY LONDRIE

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF CAMERON | § |

BEFORE ME, the undersigned Notary Public, on this day personally appeared

**Harley Londrie**, who being by me here and now duly sworn upon oath, says:

"My name is Harley Londrie. I am over eighteen (18) years of age and am

legally competent to make this affidavit which is true and correct, is based upon my

personal knowledge, and is made voluntarily and not under duress.



"I am the Plan Administrator of **Nevgulmarco Company, Inc.'s and Carmelita, Inc.'s** ERISA Plan. Pursuant to the Plan and the Federal Regulations that govern said Plan, as the Plan Administrator I have a fiduciary duty to the Plan's participant(s) and/or beneficiaries. In this capacity, I will be determining who, if any of the Plaintiffs, including the participant(s) and/or beneficiaries in the lawsuit filed by the **Romero** family against **Nevgulmarco Company, Inc. and Carmelita, Inc.** will be eligible for benefits under the Plan.

"Likewise, pursuant to the Plan, I will need to calculate benefits for the participant(s) and/or beneficiaries who are eligible for benefits. Further, I will be disbursing benefits to eligible persons under the Plan which will also entail monitoring and calculating the availability of the Plan's funds in addition to keeping all of the documentation in order to comply with the Plan's and ERISA's reporting requirements."

FURTHER, AFFIANT SAYETH NAUGHT.



**Harley Londrie**

STATE OF TEXAS                    §
COUNTY OF CAMERON                 §

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned Notary Public, by the said **Harley Londrie** on this, the ___2 kd___ day of January, 2004, to certify which WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE.

CECILIA T. ALANIZ
MY COMMISSION EXPIRES
July 15, 2007

Notary Public, State of Texas.