IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
—BROWNSVILLE DIVISION—

| | | |
|---|---|---|
| AVIGAIL MARTINEZ DE ROMERO Individually, and as Guardian of ANGEL ROMERO, JR., Mentally and Physically Incompetent; ANGEL ROMERO GONZALEZ and GLORIA BADILLO RODRIGUEZ DE ROMERO, The Natural Parents of ANGEL ROMERO, JR.; and LUCILLA DELGADO ROMERO, As Next Friend of ANGEL ROMERO DELGADO and CAROLINA ROMERO DELGADO, Minor Children of ANGEL ROMERO, JR. | § § § § § § § § § § § § | United States District Court Southern District of Texas ENTERED JAN 2 8 2004 Michael N. Milby, Clerk of Court By Deputy Clerk |
| VS. | § § | CIVIL NO. B-03-153 |
| UNIVAR USA, INC.; NEVGULMARCO COMPANY, INC.; ZIMCO MARINE, INC.; AND CARMELITA, INC. AS THE OWNER/OPERATOR OF THE O/S "CARMELITA" | § § § § § § | |

**ORDER**

Before this court are various pending motions or issues raised by the parties including: a motion to remand and a motion to dismiss which question this court's jurisdiction. The court chose to address the jurisdictional motions initially as a ruling on any other issue would be pointless if the court ultimately found it had no jurisdiction.

I.   **BACKGROUND**

The allegations in this case posit that the defendants are liable for conduct that resulted in personal injuries to Angel Romero, Jr. More specifically, the plaintiffs, who are guardians, parents, children and next friend(s) of Angel Romero, Jr. (hereinafter referred to singularly as "Romero" or

as the "plaintiffs") claim that Romero, a shrimper, was injured while employed aboard the shrimp boat O/S Carmelita. While working in the hold pursuant to directions of the Captain, Romero was allegedly exposed to toxic levels of sulfur dioxide that purportedly resulted from the application of a shrimp dip preservative containing sodium metabisulfite. The plaintiffs have alleged that this exposure has left Romero in a severely injured state.

The plaintiffs' causes of action include: 1) negligence under the Jones Act; 2) unseaworthiness; 3) common law and gross negligence; 4) strict liability; 5) breach of warranty; and 6) civil conspiracy. The lawsuit in this court was originally filed by Nevgulmarco Company, Inc. ("Nevgulmarco") seeking a declaration of its rights under various agreements it has with its employee, Romero. Approximately one hour later the plaintiffs filed their suit in state court with the claims detailed-above. The defendants timely removed that suit to this court where it was combined with the original lawsuit filed by Nevgulmarco. The plaintiffs filed a timely motion to remand triggering the dispute culminating in this order. The parties were realigned in a hearing on December 11, 2003 to delineate that Romero et al. would be referred to as the plaintiffs and that Nevgulmarco and the remainder of the defendants would be treated as the actual defendants, despite the fact that Nevgulmarco initiated this lawsuit.

## II. JURISDICTION

Defendants have claimed as jurisdictional anchors in the removed case various propositions including jurisdiction based upon: (1) the Jones Act (46 U.S.C. app. § 688); (2) the Federal Arbitration Act (9 U.S.C. § 1 et seq.); (3) the Federal Declaratory Judgment Act (28 U.S.C. § 2201); and (4) the Employee Retirement Income Security Act ("ERISA") (29 U.S.C. § 1001 et seq.).

Nevgulmarco also alleged in its Original Complaint jurisdiction under the Federal Arbitration Act and the Declaratory Judgment Act. Romero denied that any of these acts conferred jurisdiction, removal or otherwise, and seeks remand to state court.

### A.   The Jones Act, The Federal Arbitration Act & The Declaratory Judgment Act

Three of the defendants' grounds for jurisdiction can be easily resolved. While it is clear that this court has jurisdiction to hear Jones Act cases, it is also "axiomatic that Jones Act suits may not be removed from state court." Lackey v. Atlantic Richfield Co., 990 F.2d 202, 207 (5th Cir. 1993). The same is true of claims founded in federal maritime law. Williams v. M/V Sonora, 985 F.2d 808, 812 & n.7 (5th Cir. 1993); see also Addison v. Gulf Coast Contracting Servs., Inc., 774 F.2d 494, 499 (5th Cir. 1985).

The Fifth Circuit has also made clear that the Declaratory Judgment Act is a procedural statute, not an independent basis for jurisdiction. Bauhaus, USA, Inc. v. Copeland, 292 F.3d 439, 447 (5th Cir. 2002). This would preclude any argument that this court's jurisdiction was established by either the removal or the original filed case that contained a declaratory judgment claim. Additionally, the defendants have claimed jurisdiction emanating from the Federal Arbitration Act. Again, this Act does not confer an independent basis for jurisdiction for either removal or original jurisdiction. Am. Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 536 (5th Cir. 2003); see also Commercial Metals Co. v. Balfour, Guthrie, and Co., Ltd., 577 F.2d 264, 266-69 (5th Cir. 1978).

### B.   ERISA

This leaves the fourth proposed jurisdictional path, ERISA, as the only other possible means to establish jurisdiction. The argument made by defendants under this provision is a much closer call; but ultimately it must fail as well. Defendants claim that the plaintiffs' claims "relate to" an

employee benefit plan which provides benefits for "common law tort claims and statutory claims" like those "alleged by Angel Romero, Jr."

At the heart of this claim is Nevgulmarco's "Occupational Injury Benefit Plan." This plan contains several pertinent provisions, including the following two:

> Claim [sic] or Dispute [sic] arising out of any accident or occurrence <u>will be resolved exclusively through alternative dispute resolution</u> procedures, including final binding arbitration.

See <u>Docket No. 11</u> (Exhibit A at 7) (emphasis added).

### Arbitration

> By continuing to work for the Company, <u>you acknowledge and expressly agree that any claim or dispute arising out of any Accident or Occurrence</u>, or otherwise regarding or relating to the Plan, <u>will be resolved exclusively through alternative dispute resolution procedures, including final and binding arbitration</u>. The arbitration proceeding shall be conducted in the county where the Company is located or has its principle business office, in accordance with the provisions of the Federal Arbitration Act, and the applicable dispute resolution rules of Dispute Solutions, Inc. ("DSI") in effect at the time the demand for arbitration is made. You are free to hire your own attorney for the proceedings at your own expense but are not required to do so. Arbitration shall be requested in writing no later than one (1) year form [sic] the date of the incident that led to the request for arbitration. The arbitrator (or arbitrators) shall be chosen from a list provided by DSI. The arbitrator shall coordinate and limit as appropriate all pre-arbitration discovery, which shall include document production, information requests and depositions. Discovery and related procedural matters shall be conducted in accordance with the Federal Rules of Civil Procedure. The arbitrator shall issue a written decision and award, if any, stating the reasons therefore. The decision and any award shall be final and binding.

<u>Id.</u> (Exhibit A at 4) (emphasis added).

There are similar references to these provisions in Romero's employment agreement, which actually includes an agreement to resolve any employment dispute through binding arbitration. The employment agreement, signed by Romero on January 8, 2003 (nearly six months before the alleged

injury), requires arbitration not only of any dispute concerning the agreement itself and a lengthy list of other potential disputes, but it also includes specific references to the required arbitration provisions contained in the ERISA plan. It is sufficient to note that both the employment agreement and the ERISA plan contain broad provisions requiring binding arbitration as the only method to resolve legal disputes between the parties. The defendants have also produced various other exhibits, including employment booklets, all of which are used to demonstrate that it was the intention of the parties to have disputes arbitrated and that any on the job injury will be compensated from the Employees Benefit Plan. The defendants argue that the plaintiffs' lawsuit is, therefore, by necessity an integral part of its ERISA plan. Accordingly, the defendants argue that the plaintiffs' claims are preempted and this court has jurisdiction.

While the plaintiffs have made a half-hearted attempt to deny that the plan in question qualifies as an ERISA plan, this court finds that Defendant's plan clearly constitutes an ERISA plan as per the three-step analysis set out in <u>Meredith v. Time Ins. Co.</u>, 980 F.2d 352, 355 (5th Cir. 1993) and any number of other cases from this circuit (<u>i.e.</u>, an employer-established plan exists for the benefit of its employees and does not fall within the statutory exemptions due to the employer's contributions thereto). That leaves the defendants' primary argument, which is that the plaintiffs' lawsuit is "requesting relief that can only be provided by the benefits, rights to future benefits and the determination of available benefits to claimants . . . from the administration of their plan."

The Fifth Circuit in <u>Roark v. Humana, Inc.</u>, 307 F.3d 298 (5th Cir. 2002), <u>cert. granted</u>, 124 S. Ct. 44 (2003), has described the law in this area as about as succinctly as one can:

> ERISA provides two types of preemption: complete preemption under § 502(a) and conflict preemption under § 514. <u>Giles</u>, 172 F.3d at 336; <u>McClelland v. Gronwaldt</u>, 155 F.3d 507, 515-17 (5th Cir. 1998). "Section

502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief." Id. at 337.

\* \* \*

Section 502(a) complete preemption is a slight misnomer, for it does not involve traditional preemption analysis. McClelland, 155 F.3d at 516 ("Complete preemption is less a principle of substantive preemption than it is a rule of federal jurisdiction."). We do not ask whether the state law conflicts with or frustrates a congressional purpose, but whether the state law duplicates or "falls within the scope of" an ERISA § 502(a) remedy. Taylor, 481 U.S. at 64, 107 S.Ct. 1542; McClelland, 155 F.3d at 518. If Calad and Davila could have brought their claims under ERISA § 502(a), the claims would be completely preempted, and the district court would have been correct to exercise jurisdiction.

Section 514, in contrast, provides for ordinary conflict preemption. <u>State law claims that fall outside § 502(a), even though preempted by § 514, follow the well-pleaded complaint rule and do not confer original or removal jurisdiction.</u> Franchise Tax Bd., 463 U.S. at 23-27, 103 S.Ct. 2841; Giles, 172 F.3d at 337.

\* \* \*

The enforcement provisions listed in ERISA § 502(a)(5)-(9) do not provide a cause of action for participants and beneficiaries; because Davila is an ERISA participant and Calad is an ERISA beneficiary, neither could have asserted a claim that falls within these subsections. Subsections 502(a)(1)(A) and (4) deal with plan administrators' duties to supply information; they too are irrelevant. Section 502(a)(3) indicates equitable remedies are generally available under ERISA; it includes only "those categories of relief that were typically available in equity," Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 122 S.Ct. 708, 712, 151 L.Ed.2d 635 (2002), not the damages claims Calad and Davila bring, id. at 713. This leaves only two enforcement provisions of § 502(a)—§ 502(a)(2) and (a)(1)(b)—neither of which preempts Calad's or Davila's claims.

1. § 502(a)(2)

Calad and Davila argue that their HMOs were not acting as plan fiduciaries when denying them medical treatment, so § 502(a)(2) cannot cover (or completely preempt) their THCLA claims. We agree.

6

>   Section 502(a)(2) allows a plan participant or beneficiary to sue "for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109(a) in turn provides:
>
>>   Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach

Id. at 305-07.  No such fiduciary claim was made in this case.  The Roark opinion continues:

>   Section 502(a)(1)(B) allows a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  Calad's and Davila's claims of HMO medical malpractice differ fundamentally from the § 502(a)(1)(B) claims we have recognized. Section 502(a)(1)(B), we have held, creates a cause of action for breach of contract:  When a plan administrator incorrectly interprets the plan to deny benefits, the patient may sue to recover the benefits. By contract, Calad and Davila assert tort claims; they have not sued their ERISA plan administrator, nor do they challenge his interpretation of the plan.

Id. at 308-09.

Romero's claims, much like those of Calad and Davila in Roark, discussed above, are surely tort or breach of warranty claims and are not contemplated by § 502(a)(1)(B). In fact, the argument herein is less analogous than that proposed in Roark where the alleged torts were at least part of the medical care provided (or not provided) by the plan.[1]

---

[1] This court recognizes that the petition of certiorari has been granted in Roark, but chose to quote extensively from it because it is one of the latest pronouncements from this circuit and because it lays out the law in a concise fashion. The fact situation in this case is so different from the one in Roark, that this court cannot conceive that even a reversal of that case will affect this one unless the Supreme Court effectuates fairly radical changes to the existing jurisdictional law governing ERISA claims.

That is not to say that the defendants' claims are not completely understandable. They want the agreement they reached with the plaintiff (including the waiver of litigation and agreement to arbitrate) honored. Nevertheless, their situation is much more like the defendant in Hook v. Morrison Milling Co., 38 F.3d 776 (5th Cir. 1994), a case decided under § 514. In that case, the Fifth Circuit found that the plaintiff's claims based upon a failure to provide a safe workplace were not preempted because they did not affect Hook's relationship with the plan administrator, but only her employer-employee relationship. Id. at 783. The majority of the appellate court specifically rejected the employer's argument (much like the one made herein) that Hook as a part of the plan had waived her right to sue and consequently her claims necessarily related to the plan. Id. at 782; see also Noyola v. Oasis Car Wash, 220 F. Supp. 2d 638, 643 (E.D. Tex. 2002) (collecting cases from federal district courts in Texas holding "that common law negligence claims are not preempted by ERISA"); Westbrook v. Beverly Enterprises, 832 F. Supp. 188, 190-92 (W.D. Tex. 1993) (rejecting an argument that a benefit plan's waiver-of-suit clause established ERISA preemption and jurisdiction).

This court, if writing on a clean state, might tend to agree with the defendants' position. The defendants' contention that the plaintiffs have waived their right to file suit is not an unreasonable one. Nor are the defendants' interrelated contentions regarding ERISA preemption and jurisdiction unreasonable. However, the defendants' position with regard to jurisdiction has been specifically rejected by the Fifth Circuit Court of Appeals. Hook, 38 F.3d at 786. The addition of an arbitration clause to the waiver of litigation clause does not change the result, despite the fact that it clearly evidences the parties' intention that no lawsuits should result and that injured parties' remedies should be determined by the plan. The dissent in Hook clearly articulates the same sort of arguments

put forward by the defendants concerning how plaintiffs' lawsuit "relates to" the ERISA plan. Hook, 38 F.3d at 786-88 (Jones, J., dissenting). It points out that to focus solely on the claim results in totally ignoring the specific wording of the plan. While reasonable, this point of view was rejected by the majority of the panel in Hook and so the prevailing law in this circuit does not support defendants' legal position.

This fact has recently been reiterated by a district court in Noyola. In that case, the court (whose judge incidentally sat by designation on the panel in Hook and joined in the majority opinion) wrote:

> The Noyolas' do not rely on the existence of an ERISA-governed plan to argue that they are entitled to damages. In fact, to put it quite simply, the Noyolas' claims would exist even if Oasis did not have an ERISA-governed plan.
>
> * * *
>
> Finally, while neither party raises this issue, the court notes the arbitration provision within Oasis's plan does not create ERISA preemption. Similar to the reasoning employed in Hook with regard to a waiver of claims provision, the Noyolas' claims must relate to Oasis's plan to be preempted, not the other way around.

220 F. Supp. 2d at 646.

While Romero's claims may for the many reasons impact the plan as suggested by both the defendants herein and the dissent in Hook, these factors do not give rise to either ERISA-related preemption or jurisdiction.[2]

---

[2] The defendants have specifically pointed to the civil conspiracy claim as including a direct claim against the plan or its administrator. This court does not agree for two reasons. Initially, the plan and/or its administrator are not defendants. Secondly, a fairer reading of the plaintiffs' claim is that it is directed toward the manufacturer, marketer and employer of Romero in an effort to prove they knew of the danger of using the shrimp preservative. This court is not ruling on a claim directed against the plan or its

## III. CONCLUSION

For the foregoing reasons, the court hereby **GRANTS** the motion to remand this case to the 404th Judicial District Court of Cameron County, Texas. Likewise, the court also **GRANTS** the motion to dismiss the original declaratory judgment action.[3]

Signed in Brownsville, Texas, this the 27th day of January, 2004.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE

---

administrator because it does not think one has been made. If the plaintiffs later make this claim, it may very well provide grounds for removal and the court will consider the issue at that time.

[3] Nothing herein should be read as a ruling one way or the other on the parties' rights to compel arbitration. This discussion has been related solely to the determination of whether this court has jurisdiction and not on whether the plan and the parties' agreements compel a referral to arbitration. That issue will need to be decided by the state court to which this case is being remanded.